UNITED STATES, Appellee,

v.

Kenneth E. WINGART, Master Sergeant, U.S. Air Force, Appellant.

No. 57,280.
ACM 25522.

U.S. Court of Military Appeals.

Sept. 30, 1988.

For Appellant: *Captain Henry J. Schweiter* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Lieutenant Colonel Morris A. Tanner, Jr.* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni; Lieutenant Colonel Barrett E. Kean,* USAFR (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

At his general court-martial, appellant pleaded guilty to and was found guilty of having committed indecent acts upon a female under 16 years of age and was sentenced by the military judge to a bad-conduct discharge, confinement for 3 years, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in a short-form opinion.

We granted review of two related issues questioning, first, whether the military judge erred in permitting the Government to rebut appellant's Airman Performance Reports (APRs) which had been admitted as a court exhibit over objection of trial and defense counsel and, second, whether certain photographic slides were proper rebuttal evidence of those APRs. 24 M.J. 421 (C.M.R.1987).

I

After the military judge entered findings pursuant to appellant's guilty pleas, attention turned to presentencing evidence. For its part, the prosecution acknowledged appellant's awards and decorations and offered a stipulation of fact, a 40–minute videotaped interview of the victim referenced in the stipulation of fact, and an Air Force form entitled Statement of Suspect which also was referenced in the stipulation of fact—all without defense objection.

Thereafter, trial counsel called the victim's father and appellant's acting squadron commander as witnesses: The former testified about events leading up to and following his learning of appellant's molestation of his daughter, and the latter testified about appellant's prior work performance and rehabilitative potential. Specifically, the acting commander testified that, although his work record had been "[v]ery satisfactory to excellent," appellant "would have no place in the aircraft generation, in this particular squadron, or in aircraft maintenance at all" in that the "nature of his crime ... is ... such that it would not promote good bearing and behavior, and good conduct amongst the people in the squadron."

At the end of this testimony, the military judge—making reference to "the conference we had yesterday concerning this case"—inquired whether the prosecutor still intended not to introduce appellant's "APRs into evidence." Trial counsel responded that this remained the Government's position and confirmed that it was a tactical decision.

Before defense counsel proceeded with its presentencing evidence, the military judge made

clear for the record what I told counsel yesterday concerning the APRs, since

counsel tell me that that issue is likely to come up in this case. I informed counsel in the conference yesterday that while I was not making any ruling, it is my standard practice that if neither side offers APRs into evidence, that it will be directed that they be admitted as a court exhibit, and both sides were aware of that possibility. Having said that, the defense may proceed.

Thereupon, defense counsel offered into evidence "a brief, written unsworn statement by" appellant and rested.

After inquiring and learning from defense counsel that the defense, too, did not intend to introduce appellant's APRs as a matter of tactics, the military judge directed that they be produced and marked as a court exhibit. When defense counsel objected to admission of the APRs as a court exhibit, the military judge entertained argument on the motion. The defense urged initially that, since the prosecutor had first raised the matter of appellant's duty performance, the APRs were merely an extension of that inquiry and so they should be considered prosecution exhibits—which, in turn, would preclude the Government from "rebutting" the APRs, a tactic clearly anticipated by the defense. Additionally, defense counsel suggested that the Manual for Courts-Martial intended that presentencing proceedings would continue to be an adversarial process and that the court was inappropriately inserting itself into that process.

Taking an obviously unusual position— and one clearly not anticipated by the military judge—trial counsel agreed with defense counsel's suggestion regarding the tactical decisions of counsel. Noting that "we share the defense's concern about the court's, if you will, foisting its opinion on a tactical decision of the adversary," trial counsel joined in the defense objection. In further discussion, trial counsel candidly acknowledged that it would inure to the Government's benefit if the court did admit the exhibits because the Government then would seek to "rebut" them with evidence which otherwise might not be admissible.

Nonetheless, he agreed with defense counsel "that under the current state of the law, that law being the adversarial sentencing process, that is something that is part of trial tactics."

The military judge disagreed. He explained as follows:

While I haven't located the cases, lately, there have been a number of references by the appellate courts to the so-called tactical tap dancing which is going on in this case with respect to this issue, and I'm aware of the tactical reasons having spent a great deal of time myself both defending and prosecuting cases, of why, in a certain scenario, both sides would prefer not to offer the APRs.... However, as I told counsel for both sides in the conference when we stumbled upon this issue, a judge is more than a mere arbitrator, and the mere fact that both sides agree not to offer something in no way binds or controls a judge. Our quest here is for one of justice, and the mere fact that both sides agree to a point does not mean that it's in society's or the military's best interest.

I have done the balancing test required by M.R.E. 403. I think it's clear to me that—in fact, it is clear to me that an accused who has 17 years of service— well, that the interests of justice are best served by requiring that 17 years of airman performance reports be presented to the court for whatever assistance they may provide the court in tailoring an appropriate sentence in this case. That the probative value of the APRs is extremely high. In fact, it is probably the most probative matter that may be presented to this court in sentencing. In doing the 403 balancing, of course, the judge must determine if the probative value is substantially outweighed by the danger of unfair prejudice to the accused. In this case, it's clear to me that the probative value clearly far outweighs whatever prejudicial value there may be-number one; and number two, there is no evidence nor have I heard any allegation from either side that whatever prejudice might attach to the accused is unfair

prejudice. I don't see in any way, shape or form by putting in airman performance reports covering a 17 year period into evidence that an accused is being unfairly prejudiced.

This is the first time that I'm aware of that counsel for both sides have objected to the judge directing that the APRs be admitted into evidence, but I'm satisfied the judge has such authority and that in this case, directing that the APRs be admitted is not an abuse of discretion. Therefore, if there are no other objections, the objections from both sides are overruled and I'd like to have the APRs presented at this time.

Because the exhibits reflected 17 years of service as an outstanding airman, trial counsel—as defense counsel had anticipated—sought to offer evidence in "rebuttal." Defense counsel entered a blanket objection to all such evidence. After a good deal of discussion among counsel and the judge, trial counsel clarified that he sought admission of his evidence for the limited purpose of rebutting the notion implied in the reports that appellant had high rehabilitative value. Upon this basis—and after assuring the defense that he would weigh the probative value of any particular evidence offered in that regard against the danger of unfair prejudice, *see* Mil.R.Evid. 403, Manual for Courts-Martial, United States, 1984—the military judge overruled the defense's general objection.

In part pertinent to this appeal, trial counsel called to the stand appellant's ex-wife, who testified that, approximately 3 years earlier and while still married to appellant, she had found some photo slides on a night stand adjacent to appellant's side of their bed. The slides, she testified, were of a former young neighbor girl who was an Air Force dependent, and they showed the subject in various stages of undress and in provocative poses.

Prior to Ms. Wingart taking the stand, defense counsel objected to admission of the slides. He argued that the slides were not relevant, that they reflected uncharged misconduct in the nature of child sex abuse, and that they failed the Mil.R.Evid. 403 balancing test. The military judge delayed ruling on the objections until he had heard Ms. Wingart's testimony and had seen the slides.

Returning from a recess following that testimony, the military judge indicated that he found the slides admissible on two bases: First, under our then-recent decision in *United States v. Martin*, 20 M.J. 227 (C.M. A.1985), *cert. denied*, 479 U.S. 917, 107 S.Ct. 323, 93 L.Ed.22d 295 (1986), he ruled that the slides would have been admissible had the prosecution offered them simply as evidence in aggravation, *see* R.C.M. 1001(b)(4), Manual, *supra;* second, he ruled that the slides were proper rebuttal of the entries on the APRs placing appellant at the highest rating level for bearing and behavior. As to both grounds, the judge ruled that the probative value was not substantially outweighed by the danger of unfair prejudice to appellant.

## II

The reason for the "tactical tap dancing," engaged in by the parties over proffer of the APRs is apparent. R.C.M. 1001(b)(2) provides that trial counsel "may obtain and introduce from the personnel records of the accused evidence" which "includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused ..." This provision, however, does not *require* trial counsel to produce this evidence, and this case illustrates a situation in which, tactically, he might be reluctant to do so.

The personnel records would seem to reflect an airman of unfailingly outstanding military character; but the prosecutor had in his possession evidence which he believed indicated to the contrary. If he introduced the personnel records, he anticipated that he would not be allowed to present the damaging evidence, because a prosecutor cannot offer "rebuttal" to *his own* evidence. *See* R.C.M. 1001(d). Similarly, even though a defense counsel usually would introduce favorable APRs in mitigation, *see* R.C.M. 1001(c)(1)(B), in this case

he declined to do so because this might have opened the door for rebuttal by trial counsel's otherwise inadmissible evidence. The consequence was that neither party introduced the APRs. In turn, the military judge—expressly aware of the gamesmanship in which the parties were indulging but also aware of the probable relevance on sentencing of 17 years of Wingart's performance appraisals [1]—decided to seize the bull by the horns and solicit the reports as a court exhibit.

The parties do not seriously contest whether the military judge had authority to obtain the APRs as court exhibits. Article 46, UCMJ, 10 USC § 846, clearly provides, "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." One of those "regulations" is R.C.M. 801(c), which is found in Chapter VIII, "Trial Procedure Generally," in the Manual, *supra*. This rule prescribes that "[t]he court-martial may act to obtain evidence in addition to that presented by the parties." [2] *See also* R.C.M. 703, giving the court-martial an opportunity equal to that of counsel "to obtain witnesses and evidence."

■ The discussion of R.C.M. 801(c) cautions that "[i]n taking such action, the court-martial must not depart from an impartial role." However, the military judge did not violate this precept by his efforts to obtain the APRs as court exhibits. There is nothing either inherently prejudicial or favorable to either side in an accused's performance appraisal. However, typically, they will be of assistance to the court-martial in individualizing the punishment to be imposed. The military judge was simply

seeking to assure that he had more adequate information about Wingart for use in imposing an appropriate sentence.

■ The APR forms that were introduced into evidence as court exhibits specifically instruct the rater to "[c]onsider the degree to which the ratee's bearing and behavior on and off duty improve the image of Air Force noncommissioned officers." The issue which was hotly litigated at trial and which continues in this appeal is whether trial counsel was entitled to "rebut" Wingart's high marks in this regard by offering negative evidence as to his "bearing" or "behavior."

In interpreting the Manual for Courts-Martial, United States, 1969 (Revised edition), we concluded that, "[u]nless the defense offer[ed] evidence in extenuation and mitigation, the prosecution is not authorized ... 'to offer evidence in rebuttal.'" *See United States v. Morgan*, 15 M.J. 128, 134 (C.M.A.1983). We must now determine whether the same conclusion applies under the 1984 Manual.

R.C.M. 1001, which concerns "Presentencing procedure," outlines the ordinary sequence of events during sentencing, subsection (a)(1); prescribes "Matter to be presented by the prosecution," subsection (b); "Matter to be presented by the defense," subsection (c); and provides for "Rebuttal and surrebuttal," subsection (d). "Matter to be presented by the prosecution" consists of (1) "Service data"; (2) "Personal data and character of prior service of the accused"; (3) "Evidence of prior convictions"; (4) "Evidence in aggravation"; and (5) "Evidence of rehabilitative potential." In this case, the challenged evidence was not offered by trial counsel as "Matter to be presented by the prosecution" under

---

1. Some appellate judges are of the opinion that APRs should always be introduced in evidence for sentencing purposes. *See United States v. Smith*, 16 M.J. 694, 706 (A.F.C.M.R.1983).

2. Although no specific mention is made of this prerogative of the court in Chapter X, which contains rules of sentencing procedure, this does not suggest a limitation on the court's authority in this regard any more than does the omission of specific mention of it in Chapter IX,

"Trial Procedure Through Findings." Both the clarity of R.C.M. 801(c) as well as its location in a chapter containing general rules of trial procedure—preceding sections containing specific procedural rules for prefindings and presentencing stages—amply support our conclusion that the military judge here had the authority to obtain the documents as relevant court exhibits on the issue of an appropriate sentence.

R.C.M. 1001(b). Instead, it was offered to "rebut" evidence contained in the APRs which had been received in evidence as court exhibits. R.C.M. 1001(d) provides:

> *The prosecution may rebut matters presented by the defense.* The defense in surrebuttal may then rebut any rebuttal offered by the prosecution. Rebuttal and surrebuttal may continue, in the discretion of the military judge. If the Military Rules of Evidence were relaxed under subsection (c)(3) of this rule, they may be relaxed during rebuttal and surrebuttal to the same degree.

(Emphasis added.) If the APRs had been offered by the defense, entries contained therein would have been subject to rebuttal; but R.C.M. 1001 makes no provision for "rebuttal" of information contained in court exhibits or offered by court witnesses. Consequently, we conclude that the entries in the APRs were not subject to rebuttal by the prosecution.

To reach any other conclusion would actually increase the foreseeable gamesmanship. A trial counsel would realize that if he introduced the APRs, he could not rebut any information favorable to the accused contained therein. However, if they were introduced as court exhibits, any favorable remarks in the APRs would be subject to rebuttal. Obviously, in trying a case like this before a military judge who, as here, wished to have an opportunity to consider the APRs for sentencing purposes, the prosecutor would not offer these documents in evidence himself. Instead, he would wait for the military judge to have them introduced as court exhibits; and, thereafter, trial counsel would seek to "rebut" the favorable entries. Thus, an accused who had the "misfortune" of having received favorable ratings on his APRs would be subject to inquiry about specific instances of misbehavior which rebutted those favorable entries; but an accused who had not received favorable entries would be immune from such rebuttal.

For his part, a defense counsel might wish to counter these government tactics by not requesting trial by military judge alone. He would anticipate that court-martial members would be less likely than a military judge to request that the APRs be introduced in evidence;[3] and so his client would be less vulnerable to admission of evidence of specific instances of uncharged misconduct.

■ If, instead of requesting that the APRs be offered into evidence as court exhibits, the military judge had called Wingart's commander or some other person to testify as a court witness, that witness would have been subject to cross-examination about his testimony. If he expressed an opinion as to the accused's character, he could be cross-examined about that opinion; and, in the judge's discretion, the cross-examination could include questions about specific instances of conduct on the accused's part which tended to impeach the opinion.

In this context, the Air Force Court of Military Review equated cross-examination to extrinsic evidence and stated that "[a]llowing trial counsel to submit rebuttal will be similar to allowing both parties to cross-examine a witness called by the court." *See United States v. Smith,* 16 M.J. 694, 706 (1983). This equation, however, is faulty, since on many occasions much greater leeway is allowed by the Manual in cross-examination than in the introduction of extrinsic evidence.

For example, R.C.M. 1001(b)(5), which concerns "Evidence of rehabilitative potential," provides that *"[o]n cross-examination,* inquiry is allowable into relevant and specific instances of conduct." (Emphasis added.) This language does not authorize use of extrinsic evidence concerning "instances of conduct" to support or contradict an opinion as to an accused's "rehabilitative potential"; and, unless admissible for some other reason, such "instances" may not be proved by extrinsic evidence. Similarly, under the Military Rules of Evi-

---

**3.** We need not decide whether in a trial by court members, the military judge might properly direct that the APRs be introduced in evidence as court exhibits.

dence, a witness may be cross-examined as to matters—such as misbehavior on his part—which affect his credibility, *see* Mil. R.Evid. 611(b); but, apart from convictions of crime, specific instances of misconduct by a witness may not be proved by extrinsic evidence to attack or support his credibility, *see* Mil.R.Evid. 608(b). Yet a third example appears in Mil.R.Evid. 405(a), which permits "inquiry ... into relevant specific instances of conduct" during cross-examination in order to test the basis of a witness' testimony as to reputation or opinion of a person's character trait but which makes no provision at all for production of extrinsic evidence of such conduct.

Under R.C.M. 1001(d), the Military Rules of Evidence may sometimes be relaxed as to evidence in rebuttal or surrebuttal during the sentencing proceedings. However, this prior relaxation is predicated on a relaxation of the Rules of Evidence "with respect to matters in extenuation or mitigation" offered by the defense, *see* R.C.M. 1001(c)(3). No such relaxation occurred in this case. Moreover, the relaxation contemplated by R.C.M. 1001(c)(3) and, derivatively, by R.C.M. 1001(d) concerns "authenticity and reliability," rather than the scope of the evidence to be admitted.

## III

Although the incriminating slides were offered into evidence by the Government as "rebuttal," appellate government counsel now maintain that they were admissible, as well, for purposes of aggravation under R.C.M. 1001(b)(4). Reliance is placed on the military judge's announcement of a second reason for his admitting the evidence—namely, that of sentence aggravation. In this connection, the judge observed that "the photographs demonstrate that the accused has a sexual appetite for children."

Even though trial counsel did not offer the evidence on this basis, there would be little point in setting aside the sentence if the challenged evidence clearly would be admissible at a rehearing. Thus, we must consider whether trial counsel properly could have introduced the photographs if

he had attempted to do so at the outset of the sentencing proceedings—and without regard to introduction of the APRs.

The Government relies especially on *United States v. Martin*, 20 M.J. 227. In that case, only two judges participated, and there were two separate opinions. However, both judges were in agreement that admissibility of evidence for sentencing purposes was not governed by the accused's pleas. *See id.* at 230, 233. As stated by Judge Cox, "Receipt of sentencing evidence which otherwise meets the admissibility tests of the rules and the Manual is not dependent upon the character of the accused's pleas." *Id.* at 230 (footnote omitted).

This position is firmly grounded in *United States v. Vickers*, 13 M.J. 403 (C.M.A. 1982), where the accused had pleaded not guilty, and the issue before the Court was whether, in a *contested* case, the Government was precluded from presenting evidence in aggravation. The defense argued that the 1969 Manual had authorized evidence in aggravation only when a guilty plea had been entered, and so, by implication, it did not allow evidence in aggravation when there was a plea of not guilty. We rejected this interpretation—which would have led to the anomalous result that "an accused might plead not guilty merely to exclude evidence that would be damaging as to sentence," *see id.* at 406. However, we had no occasion to decide whether evidence that might be admissible under Mil.R.Evid. 404(b) in a contested case was *ipso facto* admissible in aggravation.

Of course, the holding there that, with a not-guilty plea, the Government may offer all the evidence in aggravation that would be admissible in a guilty-plea case does not logically imply that all evidence that would be admissible under Mil.R.Evid. 404(b) to establish guilt in a contested case is admissible as evidence in aggravation where a guilty plea has been entered. Certainly, a procedural rule which leads an accused to plead guilty in order to exclude damaging evidence would be more rational than the rule we rejected in *Vickers*—whereunder

an accused would be induced to plead not guilty in order to exclude damaging evidence.

In any event, both *Martin* and *Vickers* arose under the 1969 Manual; and appellant's case was tried under the 1984 Manual. Therefore, the earlier precedents are not directly applicable here; and we must look to the provisions of the current Manual.[4]

R.C.M. 1001(b)(4) states that "trial counsel may present evidence as to any aggravating circumstances *directly relating to or resulting from* the offenses of which the accused has been found guilty." (Emphasis added.) Clearly, uncharged misconduct will often be admissible as evidence in aggravation under this Rule. The uncharged misconduct may be admitted because it is preparatory to the crime of which the accused has been convicted—*e.g.*, an uncharged housebreaking that occurred prior to a larceny or rape. It may accompany the offense of which the accused has been convicted—*e.g.*, an uncharged aggravated assault, robbery, or sodomy incident to a rape. It may follow the offense of which the accused has been convicted—*e.g.*, a false official statement concealing an earlier theft of government property. However, the Drafters' Analysis, 1984 Manual, supra at A 21–26, explicitly rejects the view that R.C.M. 1001(b)(4) was intended to authorize admission of evidence of uncharged misconduct merely because under some circumstances that evidence might be admissible in a contested case to prove an offense for which the accused is being tried.

As we have observed on many occasions, it often is very difficult to determine in advance whether evidence of uncharged misconduct will qualify for admission in a particular case. *See, e.g., United States v. Brannan*, 18 M.J. 181, 185 (C.M.A.1984); S. Saltzburg, L. Schinasi, and D. Schleuter, *Military Rules of Evidence Manual* 361–63 (2d ed. 1986), Editorial Comment to Mil.

R.Evid. 404(b). Indeed, admissibility may depend on the issues that are raised at trial. *Cf. Thompson v. United States*, 546 A.2d 414 (D.C.App.1988).

Thus, in a trial for rape, evidence of an uncharged rape is not admissible if the only contested issue is the consent of the alleged victim, but it might be admissible if there was some other issue. *United States v. Woolery*, 5 M.J. 31, 33 (C.M.A.1978). Similarly, evidence of an appellant's *modus operandi* might be admissible to help identify him as the perpetrator of a crime with which he is charged if there is some question about the identity of the person who committed the crime; and yet this evidence might be inadmissible if no issue existed as to identity but only as to whether a crime had been committed in the first place. *See United States v. Rappaport*, 22 M.J. 445, 447 (C.M.A.1986). We do not believe that R.C.M. 1001(b)(4) was meant to introduce into sentencing proceedings all the complex issues which are present in applying Mil.R. Evid. 404(b) in a contested case.

Mil.R.Evid. 401 states that "[r]elevant evidence" is "evidence having any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." (Emphasis added.) In effect, the Government is arguing that evidence that might be admissible under Mil.R.Evid. 404(b) in a contested case "is of consequence to the determination of the action." *See* R.C.M. 402. We believe, however, that once findings of guilty have been entered— whether on a plea of guilty or not guilty— Mil.R.Evid. 404(b) evidence is no longer "of consequence to the determination of the action." The probative value that this evidence might have possessed prior to findings in a contested case does not create "relevance" for purpose of sentencing.

---

**4.** The Drafters' Analysis does state, however, that R.C.M. 1001(b)(4) is intended to make "clear that evidence in aggravation may be introduced whether the accused pleaded guilty or not guilty, and whether or not it would be admissible on the merits." In fact it explicitly accepts the *Vickers* holding. Manual for Courts-Martial, United States, 1984, at A 21–62 (Change 2).

"Relevance" should not be approached from the standpoint of a hypothetical contested case but instead only in relation to the language of R.C.M. 1001(b)(4). Thus, in our view, uncharged misconduct is not admissible, unless it constitutes "aggravating circumstances" within the purview of R.C.M. 1001(b)(4).

This interpretation is consistent with the way in which evidence of uncharged offenses usually is treated under Mil.R.Evid. 404(b) and 403. These rules recognize that such evidence can be very damaging to the accused. Therefore, the evidence is inadmissible unless there is some purpose to be served by its reception other than to show that the accused is predisposed to commit crime. Under the conditions prescribed in Mil.R.Evid. 404(b), introduction of this evidence accomplishes the purpose of establishing guilt of the offense charged; but after findings, when guilt has already been established, introduction of such evidence accomplishes little more than to inflict a gratuitous injury on the accused. Accordingly, we conclude that—whether the challenged evidence would have been admissible as to Wingart's guilt if he had pleaded not guilty—it did not constitute "evidence in aggravation" under R.C.M. 1001(b)(4).

The military judge stated that he would "only consider photographs as bearing on the accused's potential for rehabilitation, and that the court may not mete out additional punishment for uncharged misconduct." R.C.M. 1001(b)(5) seems to contemplate that "specific instances of conduct" may be inquired into by cross-examination of witnesses who have expressed opinions on the topic but does not authorize extrinsic evidence of uncharged misconduct in order to show the presence or absence of an accused's rehabilitative potential. Thus, the use which the military judge purported to make of the challenged evidence of misconduct was not permitted by R.C.M. 1001(b)(5).

We recognize that some will criticize the limitations which the President imposed on the evidence admissible in sentencing proceedings when he promulgated the 1984 Manual for Courts-Martial. A presentence report prepared by a probation officer for use by a Federal district judge in sentencing might well encompass information which would not be admissible in a court-martial under R.C.M. 1001. On the other hand, an accused servicemember's personnel records often provide information that even an experienced probation officer cannot compile in a presentence report.

It might be nice for the sentencing authority in a court-martial to have access to evidence about misconduct of the accused for which he has never been charged or convicted and which was not "directly relating to or resulting from the offenses of which" he "has been found guilty." However, to relax the rules of admissibility in this manner might generate "trials within trials," require the presence of many additional witnesses, and protract the sentencing proceedings interminably. This potential is especially likely when sentencing is by court members instead of by the judge—an occasion which does not arise in Federal district courts. Moreover, there is some element of potential unfairness in such use of evidence of uncharged misconduct, especially since the Government does not bear a heavy burden of proof with respect to such misconduct. *Cf. United States v. Mirandes-Gonzalez*, 26 M.J. 411 (C.M.A.1988).

We cannot say that the President's choice was irrational or arbitrary; and, this being so, we shall enforce the limitations imposed by R.C.M. 1001. When we do so here, we must conclude that the military judge erred in receiving the evidence of the photographs.

IV

Examination of the photographs, which are part of the record of trial, reveals that they might have had a signifi-

cant effect on the military judge in his sentencing—even though he purported to consider the evidence only in determining Wingart's rehabilitation potential. Accordingly, we conclude that the evidence was prejudicial and that the error should be remedied.

V

The decision of the United States Air Force Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court, which may either reassess the sentence or, set aside the sentence and order a rehearing on sentence.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting in part):

I agree with the majority opinion except as to the result. The photographs, albeit depicting a young nude female child, were not admissible under the facts of this case. However, I believe the error was harmless in this trial by military judge alone. Art. 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a), *United States v. Kinman*, 25 M.J. 99 (C.M.A.1987).