**UNITED STATES**

**v.**

**Staff Sergeant David G. CIULLA, FR 119–44–5998, United States Air Force.**

**ACM 27528.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 Nov. 1988.

Decided 16 Nov. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie, Major Jeffrey H. Curtis and Captain David G. Nix.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

The appellant was found guilty of sodomy and indecent acts with his natural daughter, in violation of Articles 125 and 134, UCMJ, 10 U.S.C. §§ 925, 934. His sentence is a dishonorable discharge, confinement for 40 years, and reduction to airman first class.

At a bench trial, the appellant pleaded guilty to the offenses charged. During his guilty plea inquiry as to sodomy, he specifically admitted that he forced his daughter to perform fellatio upon him. As part of its case-in-chief, the prosecution then sought to prove further acts of sodomy in that he had performed cunnilingus upon her as well. The Government was successful in this effort, based largely on the testimony of the child victim.

Following findings of guilty, the Government recalled the appellant's daughter during the presentencing portion of the court-martial. The prosecutor asked her whether the appellant had ever voiced a desire to perform illegal acts upon other girls. The defense immediately objected to the question on the basis of relevancy. Trial counsel's response emphasized the "relative risk of this person should he be put back out into society." After the military judge stated that he would separate out "anything that's overly prejudicial," the questioning continued:

> TC: During the time that your dad was doing these things to you that we talked about earlier, did he ever talk about doing those kinds of things to other girls?
>
> Witness: Yeah, once. One girl.
>
> TC: What did he say?
>
> Witness: He said, do you mind if I do it to your friend [D], and I said no, I don't want you to do it.
>
> TC: And what was he going to do?
>
> Witness: Cause, like this, if—he goes, do you mind if I see her naked? And, that's all he said, though.

The appellant argues that the military judge erred by allowing this testimony as to the appellant's desires with [D]. We find no error and affirm the findings.

### Uncharged Misconduct or "Facts and Circumstances?"

Citing *United States v. Wingart*, 27 M.J. 128, 135 (C.M.A.1988) the appellant argues that his fantasy as to [D] was uncharged misconduct; after findings of guilty have been entered, he argues, such uncharged misconduct is no longer of consequence unless it constitutes aggravation evidence under R.C.M. 1001(b)(4).

■ We find the evidence in question clearly admissible under R.C.M. 1001(b)(4) as an integral part of the appellant's criminal course of conduct. Regardless of the plea, the prosecution is permitted after findings of guilty to present evidence directly related to the offenses for which the accused is to be sentenced. *United States v. Vickers*, 13 M.J. 403 (C.M.A.1982); *United States v. Thomas*, 11 M.J. 388 (C.M.A. 1981); *United States v. Carfang*, 19 M.J. 739 (A.F.C.M.R.1984), *pet. denied* 21 M.J. 112 (C.M.A.); *United States v. Keith*, 17 M.J. 1078 (A.F.C.M.R.1984). We find it noteworthy that the Analysis on this point (MCM, 1984, Appendix 21, page A 21–64) cites *United States v. Rose*, 6 M.J. 754 (N.C.M.R.1978) as illustrative of the rule. In *Rose*, evidence of subsequent sexual acts was held admissible to show aggravated circumstances of the crimes with which the accused was charged.

During able oral argument, appellate defense counsel sought to distinguish the concept behind the cited cases. The defense recognized the premise that an expanded factual account might be admissible as the *res gestae* or "facts and circumstances" which surround commission of an offense. However, the defense insists, the disputed evidence in the present case is distinguishable because it entered through an entirely different door—*to prove that this individual was a danger to society.*

We need not wrestle at length with this defense contention. As the Court of Military Appeals recently commented, there would be little point in granting relief "if the challenged evidence *clearly would be admissible at a rehearing*" (emphasis added). *United States v. Wingart*, 27 M.J. at 134. In any event, we find the evidence in

question admissible as part and parcel of the circumstances surrounding the appellant's offenses against his daughter. In addition to the cases already cited, *see United States v. Silva*, 21 M.J. 336 (C.M.A. 1986); *United States v. Pitts*, 18 M.J. 522 (A.F.C.M.R.1984) *pet. denied* 19 M.J. 126 (C.M.A.1984) and *United States v. Dagger*, 23 M.J. 594 (A.F.C.M.R.1986) *pet. denied* 25 M.J. 241 (C.M.A.1987). *See also* DA Pam 27–173, *Trial Procedure* (15 Feb 1987) paragraph 25–5e(2). It follows that— whether the defense contention is correct that the evidence was inadmissible for the reasons stated by trial counsel—it was clearly admissible to show the circumstances surrounding the commission of the crimes.[1]

We find the facts of this case clearly distinguishable from those in *United States v. Wingart*, a lynchpin of the defense effort. In *Wingart*, the Court of Military Appeals found the military judge erred in admitting slides "of a former young neighbor girl who was an Air Force dependent ... in various stages of undress and in provocative poses." The photographs had been discovered by the appellant's ex-wife *approximately three years earlier. United States v. Wingart*, 27 M.J. at 131. Stale, three-year old material is a far cry from the probative "facts and circumstances" data present in the instant case.[2]

### Sentence Appropriateness

We now address the matter of appropriateness of sentence. The appellant was

1. Appellate Government counsel insist that the testimony was perfectly admissible as relevant aggravating evidence, probative on the issues of treatment and length of confinement. In particular, the prosecution emphasizes, the *subsequent* testimony of Dr. Nancy Slicner, a child psychologist, shows that when children from inside the home reach a safe haven, other children might be at risk unless the offender has been placed into a good treatment program.

2. Because of our disposition of this evidentiary issue, we need not address the proposition that any possible legal error would be harmless. As to this matter, we note that this appellant was found guilty of indecent acts occurring over a two and one-half year period. His crimes included fellatio and cunnilingus, fondling his daughter, masturbating in front of her, rubbing

subject to a dishonorable discharge, 54 years of confinement, and accessory penalties. The military judge sentenced him to a dishonorable discharge and 40 years confinement; he imposed no forfeitures and reduced the appellant to airman first class.

 It has been aptly said that it is no accident that Justice holds the scales in one hand and the sword in the other. The sword without the scales is brute force; the scales without the sword is but empty theory. Both belong together.[3] We observe that there is perhaps no type of offense more repugnant than sexual abuse involving one's own child. In our review of an appropriate sentence, we have found no Air Force case for which similar child abuse offenses—however heinous—include such a lengthy term of confinement. *See,* for example, *United States v. Saul*, 26 M.J. 568, 575 (A.F.C.M.R.1988). Considering the entire record, we find appropriate only so much of the sentence as extends to a dishonorable discharge, confinement for 30 years, and reduction to airman first class.

The findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge BLOMMERS and Judge MURDOCK concur.

his penis against her anus and rubbing her vaginal area with a feather duster. This abuse occurred almost daily. The appellant called his child a tramp and a whore; he threw money at her. She testified that she feared him as a violent individual. It is indeed difficult to imagine many acts more vile between a parent and child. Furthermore, the victim has been in therapy and still has frequent nightmares. Dr. Slicner, a government witness, testified that the victim will have a difficult time overcoming the abuse in the future. Dr. Slicner further opined that this was one of the most severe cases she had seen in her extensive work with child abuse victims.

3. *See* R. Von Ihering, *The Struggle for Law* (Chicago; 1897) pp. 1–2.