# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

**No. ACM 39273**

————————

**UNITED STATES**
*Appellee*

**v.**

**Dylan C. MILLHAUSEN**
Airman (E-2),[1] U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 August 2018

————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Bad-conduct discharge, confinement for 14 months, and reduction to E-1. Sentence adjudged 26 January 2017 by GCM convened at Fort George G. Meade, Maryland.

*For Appellant:* Captain Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————

---

[1] Appellant was an Airman First Class (E-3) at the time of the initial session of his court-martial on 28 September 2016.

JOHNSON, Senior Judge:

Appellant, in accordance with his pleas, was found guilty by a military judge sitting as a general court-martial of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Contrary to Appellant's pleas, the military judge found Appellant guilty of two specifications of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 14 months, and reduction to the grade of E-1.[3] The convening authority approved the adjudged sentence, but deferred and then waived mandatory forfeitures for six months for the benefit of Appellant's spouse.

Appellant raises two issues on appeal: (1) whether the military judge abused his discretion by admitting evidence in sentencing of uncharged assaults committed by Appellant; and (2) whether Appellant's sentence is inappropriately severe. In addition, we address a facially unreasonable delay in the post-trial processing of Appellant's case. We find no relief is warranted and we affirm the findings and sentence.

## I. BACKGROUND

Appellant met KB, at the time another active duty Airman, in the fall of 2012 when they were both stationed at Fort Meade, Maryland. They married on 20 March 2013. In approximately early June 2014, Appellant was eating chicken wings at their shared apartment when KB attempted to take one.[4] Appellant knocked her hand away twice. KB then partially spilled a drink that was on the table. In response, Appellant seized a "very tall and heavy wood[en]" kitchen chair and threw it at KB. The chair struck KB in the face, causing her to begin crying immediately. Appellant then grabbed a saucepan or pot, "banged it against the wall," and chased KB around the residence. KB "grabbed

---

[2] The military judge found Appellant not guilty of two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920.

[3] Pursuant to an unopposed post-trial motion by trial defense counsel filed prior to authentication of the record, the military judge awarded Appellant two-for-one confinement credit against his sentence due to the conditions of confinement for the ten days Appellant spent in civilian post-trial confinement immediately following his court-martial.

[4] The following description of this incident is taken from KB's trial testimony.

[her] stuff" and "left." She temporarily moved out of the apartment following the assault, which left her with "bruises and a black eye."

In July 2014, Appellant was at a club in Washington, District of Columbia, with friends. Appellant stepped outside to smoke. An individual who Appellant had met inside the club was also outside smoking. This individual offered Appellant cocaine, which Appellant accepted and inhaled through a straw directly from a plastic bag. Two or three days later Appellant provided a urinalysis sample that subsequently tested positive for cocaine.

One evening in April 2015, Appellant and KB had been out drinking in Annapolis, Maryland, with Appellant's roommate, Airman Basic (AB) EW,[5] and a female friend of KB. Eventually, KB and her friend hailed a taxi driven by WJ. As the two women prepared to enter the vehicle, Appellant approached the driver-side window, which was cracked open. In a loud, profane, and belligerent manner, Appellant informed WJ the two women would not be riding in the taxi. At trial, accounts differed as to how events subsequently unfolded. WJ testified that he asked Appellant to move away from the window. Appellant responded by "yelling and screaming and trying to force [the] window down with his hand." WJ exited the taxi in order to protect his vehicle. AB EW then interposed himself between WJ and Appellant, whereupon Appellant reached past AB EW, grabbed WJ's jacket, and ripped it. From that point, the altercation devolved into Appellant and AB EW fighting WJ with hands and feet. The witnesses agreed that at some point WJ lost his footing and ended up on the ground with AB EW kicking him repeatedly in the torso as Appellant held WJ around the neck with his arm. Police soon arrived and found AB EW "kicking [WJ] in the abdomen" while Appellant held WJ on the ground in a "headlock." WJ was bloodied and the police noted a "puddle" of WJ's blood on the sidewalk, although WJ declined to go to a hospital after he was seen by paramedics. Appellant and AB EW were both arrested by civilian police.

At trial, Appellant pleaded guilty to using cocaine in violation of Article 112a, UCMJ, but not guilty to assaulting KB and WJ as described above. Appellant elected to be tried by a military judge alone. The military judge accepted Appellant's guilty plea and then found Appellant guilty of assault consummated by a battery of both KB and WJ, in violation of Article 128, UCMJ.[6]

---

[5] EW held the rank of Airman Basic (E-1) at the time of Appellant's trial but previously held the rank of Senior Airman (E-4).

[6] The military judge found Appellant not guilty of two specifications of sexual assault in violation of Article 120, UCMJ, against a third, unrelated alleged victim.

During sentencing proceedings, trial counsel offered, *inter alia*, the record of a nonjudicial punishment action against Appellant dated 25 October 2016. The document, an Air Force Form 3070A,[7] recorded that Appellant's commander found Appellant guilty of absenting himself from his place of duty on or about 22 August 2016. One of the punishments imposed was a reprimand, which was printed on the form, in part, as follows:

> You are hereby reprimanded! Conduct of this nature cannot and will not be tolerated. Not only did you miss work on 22-23 August 2016 without authorized leave, but you missed it due to being arrested and detained for aggravated assault in downtown Washington, DC. Specifically, on 21 August 2016 at 0230 in the morning, while off-base in downtown Washington, DC, you approached a civilian man from behind, pulled off the man's turban and began striking the man in the head and face repeatedly. The man you hit was hospitalized with bruising and contusions on his head and face. As a result of your actions, you were charged on 22 August 2016 with aggravated assault in the District of Columbia and were unable to return to work until 23 August 2016. While you were absent without leave, you also failed to notify anyone in your chain of command regarding your whereabouts. . . .

Trial defense counsel objected to the description in the reprimand of an "essentially unproven Article 128 [UCMJ] allegation[ ]" as "extremely prejudicial and unfairly so in comparison to the probative value." Assistant trial counsel responded that a conviction was not required in order to impose either a reprimand or nonjudicial punishment and that the language of the reprimand was "very probative" as to why Appellant received nonjudicial punishment. The military judge interpreted trial defense counsel's objection to be based on Military Rule of Evidence (Mil. R. Evid.) 403 and summarily overruled it.

The Government recalled KB to testify during sentencing proceedings. Trial counsel attempted to elicit testimony from KB regarding other occasions on which Appellant had assaulted her. Trial defense counsel objected. After receiving argument and a proffer of the nature of the expected testimony, the military judge permitted KB to testify regarding additional, uncharged assaults. Relying on *United States v. Nourse*, 55 M.J. 229 (C.A.A.F. 2001), the military judge allowed the testimonial evidence in order to show the "full impact" of the charged assault on KB in light of Appellant's "continuing course of

---

[7] Air Force Form 3070A, *Record of Nonjudicial Punishment Proceedings (AB thru SSgt)* (April 2015).

conduct." The military judge applied Mil. R. Evid. 403 and found "that although this could be significantly prejudicial evidence towards [Appellant's] sentencing case, . . . it is not unfairly prejudicial," and that the military judge could "place the evidence in the appropriate context." However, the military judge warned trial counsel "not to argue that [Appellant] should be subject to more severe punishment on account of these uncharged batteries or incidences. Or that [Appellant] has a criminal propensity to commit battery."

KB proceeded to testify that she had endured physical and emotional abuse from Appellant throughout their marriage. KB testified Appellant spat on her multiple times; shoved her against walls; slammed her head on the ground; knocked her out; dragged her up stairs; threw her onto a couch; pulled her off of couches and out of bed by her hand and her hair; and threw a plate in her direction. In addition, she testified Appellant "constantly" belittled her, told her she was "stupid," and said that if she ever left him she would "have no one." These behaviors occurred before and after the charged chair-throwing incident and made KB feel "scared" and unable to "trust many people at all." On three occasions after the charged chair-throwing incident, Appellant told her he "wanted to kill people," including one occasion on which he "grabbed [KB's] hair and ripped [her] off the couch and said he wanted to feel the power of taking a life and killing someone."

At the conclusion of KB's testimony, trial defense counsel renewed his objection with respect to "all the matters that were after the charged misconduct" on the basis that they were not part of a continuing course of conduct with the charged offense, and that their probative value was substantially outweighed by unfair prejudice under Mil. R. Evid. 403. The military judge overruled the objection.

## II. DISCUSSION

### A. Sentencing Evidence

#### 1. Law

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal

5

principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Rule for Courts-Martial (R.C.M.) 1001(b)(2) provides that during sentencing proceedings the Government may introduce from the accused's personnel records evidence of, *inter alia*, the character of the accused's prior service, including "evidence of any disciplinary actions including punishments under Article 15." R.C.M. 1001(b)(4) provides that trial counsel may also "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty," including "evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim" of such an offense.

Mil. R. Evid. 403 provides that the military judge may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Where a military judge conducts a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent a clear abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)). If the military judge conducts the Mil. R. Evid. 403 balancing test but "does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less deference . . . ." *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005).

### 2. Analysis

#### a. Continuing Course of Conduct

Relying on *Nourse*, the military judge overruled trial defense counsel's objection to KB's sentencing testimony regarding the uncharged physical and emotional abuse she suffered at Appellant's hands over the course of their marriage. In *Nourse*, the United States Court of Appeals for the Armed Forces (CAAF) held that evidence of uncharged misconduct by an accused may be "admissible as an aggravating circumstance under RCM 1001(b)(4) [if] it directly relate[s]" to an offense of which the accused was convicted as "evidence of a continuous course of conduct . . . admissible to show the full impact" of the offense for which the accused is to be sentenced. 55 M.J. at 232; *see also United States v. Wingart*, 27 M.J. 128, 135 (C.M.A. 1988) ("Clearly, uncharged misconduct will often be admissible as evidence in aggravation under [R.C.M. 1001(b)(4)]."). *Nourse*, which was tried by a military judge alone, involved a conviction for a larceny from a sheriff's office that was part of a pattern of such

larcenies involving similar crimes, the same victim, and the same general location. 55 M.J. at 230–31. The CAAF noted the military judge "warned trial counsel not to argue that [the] appellant should be subject to more severe punishment on account of the uncharged larcenies, that [the] appellant had a criminal propensity, or that the value of the other stolen property should affect [the] appellant's sentence." *Id.* at 231. The CAAF further noted the military judge found the evidence more probative than unfairly prejudicial under Mil. R. Evid. 403 and concluded he did not abuse his discretion in using the evidence of uncharged larcenies for "an appropriate purpose -- putting [the] appellant's offenses into context." *Id.* at 232.

Appellant contends that the military judge erred because the uncharged offenses KB testified to during sentencing were not directly related to or resulting from the June 2014 chair-throwing incident and that *Nourse* is distinguishable. Appellant avers that, unlike the pattern of larcenies in *Nourse*, the alleged assaults KB testified to were different offenses, committed at different times, in different locations, and under different circumstances. We disagree. In both *Nourse* and in Appellant's case, the military judge permitted evidence of uncharged offenses that constituted a "continuous course of conduct" that included the charged offense and provided the context for the sentencing authority to understand the impact of the offense for which the accused was to be sentenced. *See id.* Whether that course of conduct involves larceny, as in *Nourse*, or physical abuse, as in Appellant's case, the CAAF's reasoning and the operation of R.C.M. 1001(b)(4) are the same. As in *Nourse*, the continuous course of conduct in Appellant's case involved similar crimes (assault and battery), against the same victim (KB), and primarily in the same general location (in and around their home). We are not persuaded that KB's description of Appellant striking her head on the ground is "much more egregious" than the charged offense of hurling a chair into her face, which Appellant minimizes as a "squabble over chicken wings." Rather, both incidents are evidently part of a continuing course of physical abuse aimed at controlling KB's behavior and resulting in negative social and psychological harm, providing the context for the military judge to appreciate the impact of the charged offense. *See* R.C.M. 1001(b)(4); *Nourse*, 55 M.J. at 232.

Nor are we persuaded by Appellant's argument that, at a minimum, the military judge abused his discretion by considering evidence of incidents that occurred after the charged assault. R.C.M. 1001(b)(4) does not bar evidence in aggravation arising after the charged offense so long as it directly relates to or arises from the offense of which the accused has been convicted. The impact of the charged offense may be affected, for better or worse, by subsequent directly-related events. *See Wingart*, 27 M.J. at 135 (explaining evidence of un-

7

charged misconduct admissible under R.C.M. 1001(b)(4) "may follow the offense of which the accused has been convicted . . . ."). In this case, the military judge could reasonably consider how the continuing nature of Appellant's conduct exacerbated the psychological impact of the June 2014 assault.

In reaching our conclusion, we find it significant that Appellant was sentenced by a military judge alone. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). In this case, far from evidence to the contrary, the record indicates the military judge was aware of the CAAF's rationale in *Nourse* for permitting evidence of a continuous course of conduct, found the evidence more probative than unfairly prejudicial under Mil. R. Evid. 403, and warned trial counsel not to attempt to use the evidence for an improper purpose. In a trial before court members, we would be significantly more concerned that the dangers of unfair prejudice, confusion of the issues, or misleading the members might substantially outweigh the probative value of such evidence. *See* Mil. R. Evid. 403. However, in this case we are confident the military judge put the evidence in the proper context and did not abuse his discretion by allowing it.

### b. Record of Nonjudicial Punishment

The military judge admitted the October 2016 nonjudicial punishment record—including the reprimand language—as evidence from Appellant's personnel record "of any disciplinary actions including punishments under Article 15" specifically authorized by R.C.M. 1001(b)(2). On appeal, Appellant argues the reprimand language improperly "bootstrapped" information that was not admissible as evidence of a prior conviction under R.C.M. 1001(b)(3). We disagree.

Appellant cites the Army Court of Military Review's opinion in *United States v. Delaney*, 27 M.J. 501, 504 (A.C.M.R. 1988), for the proposition that "characterizing appellant's arrest record as 'personal data' contained in a 'personnel record' cannot change the impact of R.C.M. [1001(b)(3)]."[8] However, to the extent Appellant relies on the persuasive authority of our sister court, *Delaney* is distinguishable. In that case the military judge admitted the appellant's enlistment contract, which reflected the appellant's pre-service arrests as an adult and juvenile for multiple offenses, as "personal data relating to the character of the appellant's prior service" indicative of rehabilitative potential. *Id.* at 502. However, evidence of an appellant's *pre-service* conduct is not evidence of the "character of prior service" authorized by R.C.M. 1001(b)(2). In

---

[8] The *Delaney* opinion erroneously refers to "R.C.M. 1003(b)(3)" at this point. *United States v. Delaney*, 27 M.J. 501, 504 (A.C.M.R. 1988).

Appellant's case, by contrast, the behavior described in the reprimand language occurred during his Air Force service; it directly related to and explained the absence without leave for which Appellant was being punished pursuant to Article 15, UCMJ; and to all appearances the nonjudicial punishment record was properly accomplished and properly maintained in Appellant's military personnel records. In other words, unlike the document in *Delaney*, it was properly-admitted R.C.M. 1001(b)(2) evidence.

Appellant argues in the alternative that, even if the reprimand language was facially admissible under R.C.M. 1001(b)(2), the military judge abused his discretion by failing to find its probative value was substantially outweighed by the danger of unfair prejudice and exclude it under Mil. R. Evid. 403. We acknowledge the military judge's cursory consideration of Mil. R. Evid. 403 on the record is entitled to limited deference. *See Berry*, 61 M.J. at 96. Nevertheless, we find the military judge's ruling correct. Although prejudicial, the reprimand was not unfairly so. Again, military judges are presumed to know and follow the law, and we find no basis to conclude the military judge used this evidence for an improper purpose. *See Erickson*, 65 M.J. at 225.

## B. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in the original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant contends his sentence to 14 months of confinement is inappropriately severe for a "first-time offender convicted of two minor batteries and a single use of drugs." Appellant notes that, although he faced a maximum term of six years in confinement, his convictions for the two assaults consummated by a battery combined contributed only one year toward that total. Without citing any other particular trial result, Appellant argues that a single use of cocaine "rarely results in . . . confinement for more than a few months." He

continues that imposing the near-maximum term of confinement for the two assaults, which he characterizes as "a childish squabble over chicken wings" and an "immature street brawl fueled by alcohol," is unjustifiably severe. Accordingly, Appellant requests that his punitive discharge be set aside and his term of confinement be significantly reduced.

"The military operates under the theory of 'unitary sentencing' which has been part of military law even before the enactment of the Uniform Code of Military Justice." *United States v. Bellacosa*, No. ACM 32266, 1997 CCA LEXIS 92, at *3 (A.F. Ct. Crim. App. 6 Mar. 1997) (unpub. op.) (citing *United States v. Keith*, 4 C.M.R. 34 (C.M.A. 1952)). Accordingly, the military judge could have sentenced Appellant to a maximum punishment that included a dishonorable discharge, up to six years in confinement, total forfeiture of all pay and allowances, and reduction to the grade of E-1, without any requirement to attribute any portion of the sentence to any particular offense. The military judge was of course aware of how much each individual offense contributed toward the maximum term of confinement as he deliberated. Knowing this, the military judge imposed a sentence that included only 14 months in confinement—less than 20 percent of the maximum term.

The assaults of which Appellant was convicted were unprovoked, violent, and disturbing. Far from a mere "squabble," Appellant's battery of KP consisted of him hurling a heavy piece of furniture at her, striking her in the face and leaving bruises, because he found her behavior annoying. Appellant's assault on WJ, the taxi driver, is equally deplorable. Appellant's belligerent behavior toward an innocent stranger instigated a bloody assault that was ended only by police intervention. We are not reassured by the fact that Appellant's behavior was "fueled by alcohol" or that Appellant held WJ in a headlock while Appellant's roommate and fellow servicemember AB EW actually kicked the victim repeatedly. Appellant further demonstrated his lack of self-control and respect for the law by accepting cocaine from a stranger outside a bar.

Although Appellant touts his "first-time offender" status, evidence from his record of service further impugns his rehabilitative potential. As discussed above, Appellant received nonjudicial punishment for being absent without leave. Additional records offered by the Government indicate Appellant was disciplined throughout his career for other offenses including underage drinking, false official statements, absence without leave, and failure to go to his place of duty. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find his sentence is not inappropriately severe. *See Sauk*, 74 M.J. at 606.

## C. Post-Trial Delay

Appellant's court-martial concluded on 26 January 2017. The following day, trial defense counsel submitted a demand on Appellant's behalf to the convening authority and all reviewing authorities for speedy post-trial processing of his court-martial. On 2 February 2017, trial defense counsel filed a motion requesting a post-trial session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), for the military judge to conduct fact-finding with respect to conditions of Appellant's post-trial confinement and requesting sentencing credit for those conditions. On 15 February 2017, the Government responded, opposing the Article 39(a) session but conceding some sentence credit was appropriate. The military judge did not rule on the motion until 14 May 2017, when he denied the requested hearing but granted two-for-one confinement credit for the ten days Appellant spent in post-trial civilian confinement. The military judge delivered this ruling and two other outstanding written rulings to the court reporter on 15 May 2017. The staff judge advocate's recommendation to the convening authority was also prepared on 15 May 2017. Trial defense counsel submitted Appellant's clemency submission to the convening authority on 30 May 2017. The convening authority took action on the findings and sentence on 5 June 2017, 130 days after Appellant's trial.

In *United States v. Moreno*, the CAAF established a presumption of facially unreasonable delay when the convening authority does not take action within 120 days of trial. 63 M.J. 129, 142 (C.A.A.F. 2006). Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

In *Moreno*, the CAAF identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). Where, as in this case, the appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id*. at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id*.

at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id*. In this case, although Appellant has requested that we "consider granting him relief" under *Moreno*, he has not asserted that the post-trial delay amounted to a denial of his due process rights, nor has he identified any particularized anxiety or concern arising from the delay between his trial and action by the convening authority.

Because we find no prejudice and the remaining *Barker* factors are not so egregious as to undermine confidence in the fairness and integrity of the military justice system, we find no violation of Appellant's due process rights under *Moreno*. Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that such an exercise of our authority is not appropriate in this case.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[9]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[9] We note an error in the court-martial order with respect to the Specification of the Additional Charge, which should be entitled "Specification" vice "Specification 2." We direct the publication of a corrected court-martial order to remedy the error.