**914**

UNITED STATES

v.

Ernest LOWE, Jr., Machinist's Mate
Third Class (E–4), U.S. Navy.

NMCM 200100653.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 3 Nov. 2000.

Decided 29 May 2002.

CDR Michael J. Wentworth, JAGC, USNR, Appellate Defense Counsel.

CDR George F. Reilly, JAGC, USN, Appellate Defense Counsel.

LT Ross W. Weiland, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, BRYANT, and COHEN, Appellate Military Judges.

COHEN, Judge:

A military judge, sitting as a special court-martial, convicted Appellant, consistent with his pleas, of three specifications of unauthorized absence (UA), simple assault, indecent assault, and disorderly conduct in violation of Articles 86, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 928, and 934. Appellant was sentenced to confinement for 90 days, forfeiture of $250 pay per month for three months, reduction to pay grade E–2, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed. Pursuant to a pretrial agreement, the convening authority suspended confinement in excess of

80 days for a period of 12 months from the date the sentence was adjudged.

After carefully considering the record of trial, Appellant's assignments of error, the Government's response, and Appellant's reply, we conclude that the findings are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. We find, however, the military judge erred by admitting Prosecution Exhibit 3 as rebuttal evidence during the presentencing phase of the trial. Accordingly, we shall reassess the sentence to remove the possibility of any material prejudice to the substantial rights of Appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Statement of Facts

On 5 May 2000, Appellant went UA from 0700 to 1120 hours to gamble at a casino in Connecticut. Prosecution Exhibit 1 at 1; Record at 23–27. Three days later, while at the Navy Exchange in Groton, Connecticut, Appellant assaulted TH, a civilian employee, by grabbing at a necklace she was wearing. Prosecution Exhibit 1 at 2; Record at 36–38. On 17 May 2000, Appellant went UA a second time when he left his command and went to Kentucky to visit his fiancée. Prosecution Exhibit 1 at 1; Record at 28–31. He returned voluntarily on 10 June 2000. Prosecution Exhibit 1 at 1; Record at 29.

On 26 June 2000, Appellant, while in uniform, entered a McDonald's restaurant on board Naval Submarine Base New London, Groton, Connecticut. Prosecution Exhibit 1 at 2; Record at 42–47. Appellant had applied for a job at the McDonald's, but had not yet heard if he had been hired. Record at 42–44. Appellant instigated an argument with the restaurant manager over why he had not yet been given the job. *Id.* at 44. Appellant yelled at the restaurant manager and used vulgar language. Prosecution Exhibit 1 at 2; Record at 44–45. Hospitalman Chief [HMC] MH, U.S. Navy, was there with his children and witnessed the commotion. He intervened in an attempt to calm Appellant down. Because MH was dressed in civilian clothing, Appellant did not know until MH intervened that he was a chief petty officer. Notwithstanding, Appellant argued with him, as well. Appellant continued to cause a scene until the base police arrived. Record at 42–47.

On 7 August 2000, Appellant knocked on the barracks room door of Seaman Apprentice (SA) NB, U.S. Navy, and she invited him into her room. Prosecution Exhibit 1 at 2; Record at 38–39. Appellant approached SA NB, hugged her, and grabbed her breast and crotch area, without her consent, in order to satisfy his sexual desire. Prosecution Exhibit 1 at 2; Record at 39–41. Appellant went UA a third time from 21–28 August 2000, after failing to return from leave. Prosecution Exhibit 1 at 2; Record at 32–35.

During the presentencing phase of Appellant's court-martial, trial defense counsel requested that the evidentiary rules for the court be relaxed, pursuant to RULE FOR COURTS-MARTIAL 1001(c)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). Record at 65. The military judge granted the defense request and admitted, as Defense Exhibit A, a letter from Lieutenant (LT) W, a Navy psychologist. Record at 66. In the letter, the psychologist stated that Appellant "requested supportive counseling prior to his present legal troubles to help him better understand his difficulties interacting with women." Defense Exhibit A. After providing a detailed assessment of Appellant's "longstanding interpersonal problem relating to women," she concluded by stating: "In my professional opinion, he does not present a serious threat to society." *Id.*

Later, trial counsel offered, and the military judge admitted over defense objection, Prosecution Exhibit 3, to rebut Defense Exhibit A. Record at 70–73. Prosecution Exhibit 3 is a 17–page incident report with 28 pages of attached statements and documents that detailed a series of incidents from May and June of 2000, in which Appellant was accused of harassing and assaulting various women, only one of whom was the victim of an offense for which Appellant was convicted at this court-martial.

### Admissibility of Prosecution Exhibit 3

Appellant asserts that Prosecution Exhibit 3 was improper rebuttal evidence. We agree. The admission of rebuttal evi-

dence is "within the discretion of the military judge." *United States v. Tilly*, 44 M.J. 851, 852 (N.M.Ct.Crim.App.1996); R.C.M. 1001(d). The standard of review for admission of sentencing evidence is whether the military judge abused his discretion. *United States v. Zakaria*, 38 M.J. 280, 283 (C.M.A. 1993). Abuse of discretion is more than a reasonable difference in opinion; instead this court must find that the ruling was "fanciful, clearly unreasonable, or clearly erroneous in order to be invalidated on appeal." *United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987)(internal quotes and citation omitted).

■ The Government argues that the military judge did not abuse his discretion in admitting Prosecution Exhibit 3, because it was proper rebuttal evidence or, in the alternative, proper aggravation evidence. Taking the Government's latter argument first, we disagree with the Government's contention. First, the evidence was neither offered by the prosecution,[1] nor admitted by the military judge as aggravation.[2] Except for the single incident alleged in Specification 3 of Charge III, the incidents described in Prosecution Exhibit 3 concern uncharged misconduct not involving "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4).

In *United States v. Nourse*, 55 M.J. 229 (2001), our superior court reviewed past cases addressing the criteria "directly relating to or resulting from offenses" that involved "a continuing course of conduct." The court summarized the holdings of its decisions, stating:

> [W]hen uncharged misconduct is part of a continuous course of conduct involving *similar crimes and the same victims*, it is encompassed within the language "directly relating to or resulting from offenses of which the accused has been found guilty" under RCM 1001(b)(4).

*Nourse*, 55 M.J. at 232 (emphasis added).

The evidence in this case is dissimilar to the evidence found admissible in *United States v. Mullens*, 29 M.J. 398 (C.M.A.1990) and *Nourse*. In *Mullens*, evidence of uncharged indecent liberties the accused took with his children was admissible at sentencing for sodomy and indecent acts with his children, because they involved the same victims. *Mullens*, 29 M.J. at 400. In *Nourse*, evidence regarding uncharged larcenies was admissible, because each larceny was part of a continuing scheme to steal from a single entity, the Orleans Parish Criminal Sheriff's Office. *Nourse*, 55 M.J. at 232. In contrast, here, the uncharged conduct involved different individuals.

In *United States v. Shupe*, 36 M.J. 431 (C.M.A.1993), our superior court concluded that evidence of five additional drug transactions demonstrated a continuous course of conduct, i.e., "part of an extensive and continuing scheme to introduce and sell [lysergic acid diethylamide] LSD to numerous buyers assigned to the naval base," because they "showed 'the continuous nature of the charged conduct and its full impact on the military community.'" *Id.* at 436 (quoting *United States v. Ross*, 34 M.J. 183, 187 (C.M.A.1992))(holding aggravation evidence admissible to show accused had altered 20–30 enlistment aptitude tests for profit, even though he had pleaded guilty only to four specifications of wrongfully altering such tests).

We read both *Shupe* and *Ross* as cases in which the victim was the Naval Service itself. In the former case, drug usage by persons aboard a naval installation undermines discipline and unit readiness within the Naval Service; in the latter case, the enlistment of unqualified recruits, likewise, is detrimental to the efficiency of the Naval Service. *See Shupe*, 36 M.J. at 436; *Ross*, 34 M.J. at 187. Again, the victims of the uncharged misconduct in Prosecution Exhibit 3 were individuals different from the ones Appellant was convicted in this court-martial of assaulting.

Inadmissible aggravation evidence cannot be introduced through the rebuttal "back-

---

1. "Sir, this goes directly to rebut what Dr. [W]'s conclusions [are] in her statement, here." Record at 70.

2. "I'll only consider it for the limited purpose of rebutting the doctor's statement." Record at 78.

door" after the military judge has relaxed the rules of evidence for sentencing. In *United States v. Manns*, 50 M.J. 767 (N.M.Ct.Crim. App.1999), *aff'd*, 54 M.J. 164 (2000), the military judge admitted prosecution evidence not only as rebuttal, but also in aggravation, over the objection of defense counsel. This court found error, stating:

> We find no rationale within these rules which would authorize relaxation of the rules of evidence in a situation where the Government sought, through motion, to re-open its case in aggravation and the military judge granted that motion. The rules are not relaxed in that situation.

*Manns*, 50 M.J. at 769.

We now address the Government's primary argument that Prosecution Exhibit 3 was proper rebuttal. At trial, the military judge concluded:

> I believe that by Lieutenant [W] stating that she—that, in her professional opinion, the accused does not represent a serious threat to society, that the government can rebut that opinion, through—through incidents that—that are—that contradict that opinion and the rules of evidence ... have been relaxed, so I think it is an appropriate topic for rebuttal. [The Government has] evidence that would be inconsistent of the accused not being a serious [threat to] society. So, I'll go ahead and admit [Prosecution Exhibit 3] into evidence.

Record at 74. We conclude that his ruling was clearly erroneous and that he, thereby, abused his discretion by admitting the exhibit.

■ First, the Government, relying on Military Rule of Evidence 405(c) and its analysis in the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), App. 22 at A22–35, argues that rebuttal of LT W's letter is proper with extrinsic evidence, when the Government had no opportunity to cross-examine LT W. Government's Brief of 1 Feb 2002 at 5. That rule of evidence provides the

*methodology* of proving character. The question here is not the method of proving character, but rather the substance of the proffered evidence. Thus, while "[t]he Rule exempts statements used under it from the hearsay rule insofar as the mere use of an affidavit or other written statement is subject to that rule," MCM, App. 22 at A22–35, Mil. R. Evid. 405(c) does not itself permit hearsay evidence in the form of specific instances of conduct to impeach an opinion. Although the Government, under Mil. R. Evid. 405(c), could have presented a written opinion from another expert to rebut LT W, it could not rely upon Mil. R. Evid. 405(c) as authority permitting extrinsic evidence of specific instances of misconduct to rebut an opinion.

■ Also, while the military judge granted the defense request to relax the rules of evidence to permit the admission of Defense Exhibit A, the relaxation of the rules of evidence does not so relax the rules as to permit improper rebuttal. As stated by our superior court, "the relaxation contemplated by R.C.M. 1001(c)(3) and, derivatively, by R.C.M. 1001(d) concerns 'authenticity and reliability,' rather than the *scope* of the evidence to be admitted." *United States v. Wingart*, 27 M.J. 128, 134 (C.M.A.1988)(emphasis added); *see also Manns*, 50 M.J. at 769.

■ The proper way to impeach LT W's opinion with this evidence would have been to subject her to cross-examination about it. If she had been cross-examined, she may have admitted that she was unaware of the incidents in reaching her opinion or she may have admitted that she, indeed, was aware of the incidents, but came to the opinion regardless.[3] What is impermissible, however, is to admit the uncharged misconduct in lieu of cross-examination. *Wingart*, 27 M.J. at 133–34. Stated otherwise, while, on cross-examination, an inquiry of the holder of an opinion as to specific instances of conduct is permissible to test the opinion, introduction of extrinsic evidence as to specific instances

---

3. In the former instance, proper cross-examination would have been to ask her what her opinion would be had she been aware of the uncharged misconduct. She could have possibly opined that her opinion would not be the same or she could have maintained her opinion and given reasons for it. Likewise, if she was already

aware of the uncharged misconduct, she could have explained why she had reached the opinion, despite the incidents. Depending on her answers, the military judge could have, as the trier-of-fact, judged her credibility and opinion, if her opinion had been reached or maintained with knowledge of the uncharged misconduct.

of conduct in order to impeach an opinion (in contrast to an assertion of fact) is not permissible.[4] *Id.; Manns,* 50 M.J. at 770.

We, thus, conclude the military judge abused his discretion in admitting Prosecution Exhibit 3[5] and shall reassess the sentence, in accordance with *United States v. Cook,* 48 M.J. 434, 438 (1998) and the cases cited therein, to ensure that the sentence is both appropriate and free of any prejudice caused by the military judge's error.[6]

### Conclusion

The findings and only so much of the sentence as provides for a bad-conduct discharge, confinement for 60 days, and reduction to E–2 are affirmed.

Chief Judge LEO and Judge BRYANT concur.

---

4. We recognize that the pretrial agreement precluded the parties from requesting production of any witness at Government expense for the presentencing hearing. *See* Appellate Exhibit I, ¶ 15c., at 4. However, whether or not LT W or any other witness was available as a witness, Prosecution Exhibit 3 was inadmissible.

5. Both parties recognize that the admission of rebuttal testimony is subject to the balancing test of Mil. R. Evid. 403. Appellant asserts that the military judge failed to conduct the necessary balancing. Appellant's Brief of 9 Aug 2001 at 10–11; Appellant's Reply Brief of 14 Mar 2002 at 2 n. 1. The Government concedes that the military judge did not explicitly state he was balancing probative value against unfair prejudice. Government's Brief of 1 Feb 2002 at 7. The Government nevertheless contends that the balancing was "clear from the colloquy...." *Id.* Because we have concluded that Prosecution Exhibit 3 was improper rebuttal, we need not address whether the military judge undertook the required balancing. We note in passing, however, that it would be beneficial for military judges to state for the record that he or she has conducted the mandated balancing test.

6. We considered Appellant's remaining assignment of error regarding sentence appropriateness in our reassessment of the sentence.