**UNITED STATES, Appellee**

v.

**Private First Class Walter D. HENSON,
United States Army, Appellant**

**ARMY 20010657.**

U.S. Army Court of Criminal Appeals.

6 Feb. 2003.

For Appellant: Captain Mary C. Vergona, JA; Captain Fansu Ku, JA.

For Appellee: Pursuant to A.C.C.A. Rule 15.2, no response filed.

Before HARVEY, Senior Judge, BARTO, and SCHENCK Appellate Military Judges.

## OPINION OF THE COURT

BARTO, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiracy to commit larceny and

larceny (two specifications), in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, eighteen months of confinement, and reduction to Private E1. The military judge also recommended that the convening authority approve only ten months of confinement if appellant paid each of the three testifying victims $400. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for ten months, and reduction to Private E1.[1]

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. Our review of the record of trial reveals that the military judge erroneously considered inadmissible presentencing evidence. We will reassess the sentence in our decretal paragraph.

### Facts

During the presentencing portion of appellant's trial, the military judge permitted the government to cross-examine defense witnesses on unrelated acts of misconduct allegedly committed by appellant. Trial counsel asked two defense witnesses, who had previously testified that appellant had good military character, whether they knew that appellant had unlawfully taken a microwave from his barracks room and pawned it for spending money.[2] During rebuttal, and over defense objection, the military judge then allowed the government to present extrinsic evidence concerning this wrongful taking.

Appellant's former roommate testified that he had once returned from leave to find their

1. Prior to action, appellant paid $400 to each of the three victims.

2. One witness was aware of the misconduct, while the other stated that he was "not really aware of that."

3. After being called as a rebuttal witness, 1SG Mansfield attempted to testify about appellant's off-duty conduct. Trial defense counsel objected that such testimony was improper rebuttal because "[w]e had testimony specifically about duty performance at work and if this is going to be rebuttal it should contradict that." After the military judge sustained this objection, trial counsel asked 1SG Mansfield on direct examination to identify what problems he had with appel-

government-issued microwave missing from their barracks room. The following exchange then occurred between trial counsel and the witness:

Q. And what happened to it?

A. I asked him what happened to it and he said he pawned it, sir.

Q. And this didn't belong to the accused, did it, this microwave?

A. No, sir.

Q. Did the accused express remorse over stealing the microwave?

A. He said he was going to try to get it back out on the next payday.

Q. Did he say anything to the effect of whether or not he felt like he had done the wrong thing? Do you recall?

A. No, sir.

On cross-examination, trial defense counsel elicited that the microwave was eventually "replaced." During presentencing argument, trial counsel referred to the pawning of the microwave as evidence that the misconduct for which appellant was on trial was not an isolated incident; there was no objection by trial defense counsel to this argument.

The government also called other witnesses who testified concerning appellant's substandard military appearance, room cleanliness, and failure to complete a recent Army Physical Fitness Test (APFT). First Sergeant (1SG) Mansfield was allowed to testify over defense objection[3] to the following:

Okay. PFC Henson's uniform and appearance has never been [ ] stellar, part of that's just the fact that you, you know, he's in the motor pool, and he just goes all out

lant "in other areas that are duties of a soldier since the time of the offenses." Trial defense counsel renewed his objection, stating "I believe this [is] outside the scope of that view." The military judge overruled the objection "insofar as examination relates to on-duty performance." Notwithstanding this limitation, 1SG Mansfield then provided testimony concerning appellant's off-duty conduct as described above without interruption by the military judge. Under these circumstances, we conclude that the objections by trial defense counsel were sufficiently specific to preserve the issue of the admissibility of this evidence on appeal. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 103(a)(1).

to get his job done and do that. You know, some mechanics can do that and look good and do it, and some can't. I've always had a problem with PFC Henson and his room, keeping his room clean, et cetera. I had to straighten him out one time with regards to he had [a] noose hanging from his ceiling fan. It was a monkey or something hanging from the noose and we had to jump on him for that. I don't know if it is just an education thing with him or what, but he, you know, didn't feel like there was anything wrong with it and that was the end of it.

First Sergeant Mansfield then explained that appellant's conduct in hanging the monkey from the noose could have affected racial harmony within the unit. The military judge also allowed the first sergeant to testify, over defense objection as to relevance, that appellant usually wore a hat backwards on his head while in civilian clothing and that the hat had "a big marijuana leaf" on it. Further, 1SG Mansfield observed that appellant wore t-shirts with slogans that were "always about alcohol or drugs, you know."

After 1SG Mansfield testified, the trial counsel called appellant's former squad leader, who testified as follows on direct examination without objection by trial defense counsel:

Q. There's been testimony that the accused has maintained a good attitude and good duty performance since the time he was arrested for theft. What I want to ask you is what specific instances, on-duty instances, have you seen where the accused was not maintaining a good attitude or not fully performing his duties?

A. The one specific instance would be a couple of different violations of AR 600-1, uniform appearance. That would be the primary one. His uniforms weren't exactly to standard, they were pretty messed up.

Q. Anything else that you recall? Has he maintained physical fitness performance levels?

A. His weight is over.

Q. Tell us about the incident with the PT test?

A. We had a PT test several weeks ago, we were testing several soldiers. He did, believe he did like 10 or 12 pushups and got up and the same thing with the sit-ups.

Q. And what did he say when he got up?

A. "I'm done." He got up and then the same thing with the sit-ups, and then on the run when they took off for the run he turned around and walked up to the tester and said, "I'm done."

Q. Was he injured?

A. No.

### Law

We will not overturn a military judge's ruling to admit evidence to which counsel objects at trial unless the ruling is an abuse of discretion,[4] and the evidence admitted causes material prejudice to the substantial rights of an appellant. Mil. R. Evid. 103(a); see UCMJ art. 59(a), 10 U.S.C. § 859(a). It is clear that "[t]he prosecution may rebut matters presented by the defense" during presentencing proceedings. Rule for Courts–Martial [hereinafter R.C.M.] 1001(d). For example, the prosecution could rebut evidence of "particular acts of good conduct or bravery" by an accused admitted under the provisions of R.C.M. 1001(c)(1)(B) with contradictory evidence that the acts did not occur. However, a military judge abuses her discretion when she allows the government to rebut opinion or reputation evidence of good character with extrinsic evidence of specific instances of misconduct by appellant. See United States v. Pruitt, 46 M.J. 148, 151 (1997). As the Air Force Court of Criminal Appeals has observed,

Once the accused opens the character door, the prosecution may walk through it with cross-examination on specific instances of conduct or its own reputation or opinion character witnesses in rebuttal. But, the prosecutor may not prove specific acts of conduct through extrinsic evidence solely to rebut the accused's character evidence.

4. *United States v. Harris,* 55 M.J. 433, 438 (2001).

*United States v. Pruitt,* 43 M.J. 864, 868 (A.F.Ct.Crim.App.1996), *aff'd,* 46 M.J. 148 (1997) (citation omitted); *cf.* Mil. R. Evid. 405 (describing authorized methods of proving character).[5]

 Such erroneous admission of evidence at a court-martial causes material prejudice to an appellant's substantial rights at presentencing only if we determine that the evidence substantially. influenced the adjudged sentence. *See United States v. Boyd,* 55 M.J. 217, 221 (2001) (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). We evaluate the influence of erroneously admitted evidence "by weighing (1) the strength of the [g]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Kerr,* 51 M.J. at 405 (citing *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985)).

### Discussion

 The military judge erred in this matter when she admitted, over defense objection and in order to rebut evidence of good military character, extrinsic evidence of appellant's act of pawning government property, his racially insensitive conduct and substandard military appearance, and the uncleanliness of his room. *See Pruitt,* 46 M.J. at 151; *Kerr,* 51 M.J. at 405. We must now evaluate the influence of the erroneously admitted evidence. on the adjudged sentence. *See* Mil. R. Evid. 103(a); UCMJ art. 59(a); *Kerr,* 51 M.J. at 405; *Boyd,* 55 M.J. at 221.

The government case in aggravation was somewhat limited. Appellant pleaded guilty to conspiring to steal and stealing nine tailgates from trucks located both on-post and off-post. All three victims who testified, however, indicated that their tailgates had either been returned or replaced by their insurance companies.[6] As noted above, appellant's former squad leader testified in rebuttal without objection by trial defense counsel, that appellant was overweight, substandard in military appearance, and had willfully failed to complete an APFT. This testimony was offset in part when trial counsel called two noncommissioned officers who, with knowledge of appellant's duty performance, stated that he had fair rehabilitative potential.

The defense case in extenuation and mitigation focused almost entirely upon appellant's good military character, and included five witnesses and seven exhibits attesting to appellant's character, courage, and excellent duty performance. Three noncommissioned officers testified that they were surprised by appellant's misconduct, and two of them opined that appellant had rehabilitative potential. There was also remarkable and uncontroverted testimony at trial that appellant had twice acted (once before and once after joining the Army) to save the lives of others who had found themselves in danger on the water.

Adverse character evidence concerning appellant would therefore be relevant and material insofar as it tended to rebut evidence of appellant's good military character. *See* Mil. R. Evid. 405(a). As such, the military judge properly allowed cross-examination of two defense witnesses concerning their knowledge of appellant's taking and pawning of a government-owned microwave. *Id.*

However, the danger of extrinsic evidence of bad character typically is not immateriality, but rather that it will "over persuade" the trier of fact, resulting in punishment based

---

5. This rule is applicable to all trials by courts-martial, regardless of whether the case is before members or a military judge alone, and it remains in effect regardless of the stage of the proceedings. *See* Mil. R. Evid. 101(a), 1101(a). As our superior court has observed,

> The Military Rules of Evidence are applicable at sentencing, but, at the discretion of the military judge, may be relaxed for the defense when it presents its evidence in extenuation or mitigation. Although the rules may be relaxed, however, otherwise inadmissible evidence still

is not admitted at sentencing. The cases indicate "that the relaxation of the Rules goes more to the question of whether the evidence is authentic and reliable."

*United States v. Boone,* 49 M.J. 187, 198 n. 14 (1998) (citations omitted).

6. At the time of trial, insurance deductibles and other related expenses had not yet been fully reimbursed under Article 139, UCMJ, 10 U.S.C. § 939.

upon the extrinsic acts instead of the facts of the case. *See Pruitt,* 46 M.J. at 150. In this case, rebuttal testimony by 1SG Mansfield implied that appellant was a racist whose actions adversely affected the racial harmony of his unit. Such evidence could be relevant if there was any evidence that appellant's larcenous misconduct was motivated by bigotry,[7] but there was no such evidence introduced in this case.

Under these circumstances, 1SG Mansfield's testimony encouraged the military judge to make her sentencing decision upon an improper basis.[8] Evidence of possible racism by appellant begs to be used for an improper purpose, even in the context of sentencing proceedings before a military judge.

■ Notwithstanding the quality of the evidence adduced on rebuttal, we are not persuaded by the record that the military judge's error materially prejudiced any substantial right of appellant. *See* UCMJ art. 59(a). Appellant's guilt was uncontroverted. He pleaded guilty pursuant to a pretrial agreement and it is unlikely that the rebuttal testimony substantially influenced the military judge who sentenced appellant. The generous recommendation for clemency made by the military judge, and adopted by the convening authority, is further evidence that the improper rebuttal evidence did not significantly prejudice appellant. However, to moot any claim of possible prejudice, we will reassess the sentence. *See* UCMJ art. 66(c); *United States v. Tardif,* 57 M.J. 219, 223 (2002)(citing *United States v. Wheelus,* 49 M.J. 283, 288 (1998)).

### Decision

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months, and reduction to Private E1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored as mandated by Article 75(a), Uniform Code of Military Justice.

Senior Judge HARVEY and Judge SCHENCK concur.

---

7. *See, e.g.,* R.C.M. 1001(b)(4) (allowing evidence that offense was hate crime to be presented to sentencing authority).

8. Much the same can be said of the rebuttal testimony by appellant's former squad leader in which he described an apparently willful dereliction of duty by appellant when he refused to complete the APFT. However, trial defense counsel failed to object to this testimony, thereby waiving any claim for appellate relief in the absence of plain error. *See* Mil. R. Evid. 103(a)(1). We decline to conclude that admitting such testimony was plain error, but we have nevertheless considered the prejudicial effect of the former squad leader's testimony when gauging the strength of the government's case apart from 1SG Mansfield's rebuttal testimony.