# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Carl T. BRIDGES,
### Fireman Machinery Technician (E-3), U.S. Coast Guard

## CGCMS 24300

## Docket No.  1233

## 18 May 2007

Special Court-Martial convened by Commander, Eighth Coast Guard District.  Tried at Pensacola, Florida, on 26 October 2004.

| | |
|---|---|
| Military Judge: | CDR Timothy G. Stueve, USCG |
| Trial Counsel: | LT Bart A. Marcules, USCGR |
| Assistant Trial Counsel: | CDR Jeffrey C. Good, USCG |
| Defense Counsel: | LT Richard H. McWilliams, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | CDR Jeffrey C. Good, USCG |

## BEFORE
## McCLELLAND, KANTOR, & FELICETTI
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by a special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses:  two specifications of insubordinate conduct toward a superior petty officer, in violation of Article 91, Uniform Code of Military Justice (UCMJ); one specification of wrongfully using marijuana, one specification of wrongfully using cocaine, and one specification of wrongfully using Xanax (Alprazolam), a Schedule IV controlled substance, all in violation of Article 112a, UCMJ; and one specification of breaking restriction, in violation of Article 134, UCMJ.  The military judge sentenced Appellant to a bad-conduct discharge, reduction to E-1, and confinement for 120 days, against which he ordered credit for 104 days of pretrial confinement pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).  The Convening Authority approved the sentence as adjudged

and applied the *Allen* credit against the approved confinement, but did not order the sentence executed. The pretrial agreement did not affect the sentence.

Before this Court, Appellant has assigned as error that the military judge abused his discretion when he admitted Prosecution Exhibit 3 over defense objection because it was extrinsic evidence of specific acts of misconduct offered to rebut an opinion.

During the presentencing stage of the trial, Defense Exhibit A was admitted after the rules of evidence had been relaxed under Rule for Courts-Martial (R.C.M.) 1001(c)(3), Manual for Courts-Martial, United States (2002 ed.).[1] (R. at 176.) It is a letter to defense counsel from Appellant's father dated 22 October 2004, four days before the trial.[2]

Defense Exhibit A includes the following words:

> Unfortunately we can't open up our young people's heads and pour in all of our knowledge and experience, they have to make their own mistakes and the best we can hope is that they learn from them. I really believe that Thomas has learned as much from his mistakes as he did from his training in the Coast Guard. His mother and I have visited him every chance we could and we have seen him grow up quite a bit over the last several months. The whole experience of being in the Coast Guard (even in the Brig) has helped him grow and develop as a man. I believe that Thomas is more squared away now than he has ever been in his life. Thomas still has a long way to go in life to be where he needs be mentally, emotionally, and spiritually.

The Government offered Prosecution Exhibit 3 for Identification in rebuttal, which is a letter to trial counsel dated 2 September 2004 from the Officer in Charge of the brig where Appellant was in pretrial confinement since 14 July 2004. It was admitted over defense objection as Prosecution Exhibit 3.[3] (R. at 181.)

Prosecution Exhibit 3 indicates that Appellant had displayed a negative and uncooperative attitude and had been "found to be in violation of several Brig Regulations," as a result of which he was "currently in Desegregation for Disobedience, Disrespect, Staff Harassment and Provoking words and Gestures." At trial, defense counsel objected that this was not proper rebuttal, that it

---

[1] The 2002 edition of the Manual for Courts-Martial was in effect at the time of the offenses resulting in the charges. The relevant provisions in both the 2002 and 2005 editions are identical.
[2] The full text of Defense Exhibit A is found in Appendix A hereto.
[3] The full text of Prosecution Exhibit 3 is found in Appendix B hereto.

contained uncharged misconduct, and that the 2 September letter logically could not rebut the 22 October letter; he also invoked Military Rule of Evidence (M.R.E.) 403, asserting that the probative value of the 2 September letter did not outweigh the possible prejudice. (R. at 179-81.) The Government contended that the 22 October letter "leaves the impression that the accused's conduct improved in the brig," and that the 2 September letter tended to rebut that. (R. at 181.) The military judge overruled the objection without comment and with no mention of weighing its probative value against the danger of unfair prejudice pursuant to M.R.E. 403. *Id.*

Appellant asserts that it was error for the military judge to admit Prosecution Exhibit 3 over defense objection. A military judge's evidentiary ruling during the sentencing stage is reviewed for clear abuse of discretion. *United States v. Clemente*, 50 M.J. 36, 37 (C.A.A.F. 1999). Rulings where balancing under M.R.E. 403 is articulated receive considerable deference; rulings where balancing is omitted receive no deference. *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001); *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

Appellant contends that the military judge abuses his discretion when he allows the Government to rebut opinion evidence of good character with extrinsic evidence of specific instances of misconduct, citing *United States v. Pruitt*, 46 M.J. 148, 151 (C.A.A.F. 1997), and *United States v. Henson*, 58 M.J. 529 (A.Ct.Crim.App. 2003). (Appellant Br. 5.)

*Pruitt* concerns evidence before findings. "If court members learn of bad character, they are more likely to convict on the basis of prior misdeeds than on the facts of the case." *Pruitt*, 46 M.J. at 150 (*citing* Harry Kalven, Jr., & Hans Zeisel, *The American Jury* 160-61, 178-79 (1966)). Hence only the defense may put the accused's character in issue, and the Government's recourse is cross-examination of the defense's character witnesses concerning the foundation for their testimony, which may probe a witness's knowledge of misconduct if there is a good-faith belief supporting the question. *Id.* at 151.[4] Thus, limited reference to misconduct is allowed notwithstanding M.R.E. 404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

---

[4] M.R.E. 405(c) allows the defense to introduce character evidence by affidavit or other written statements, which the prosecution may rebut by affidavit or other written statements, "if, aside from being contained in an affidavit or other written statement, it would otherwise be admissible under these rules." At the presentencing stage, relaxation of the rules under R.C.M. 1001(c)(3) has the same effect.

As we see it, the *Pruitt* rationale and the prohibition of M.R.E. 404(b) do not obviously apply after the accused has been convicted, since there is no longer a danger of conviction on the basis of prior misdeeds or any possibility of using bad character to show action in conformity therewith. Therefore, we consider *Pruitt* inapplicable to this case. We find *Henson* unpersuasive because it leaps from the pre-findings context of *Pruitt* to the presentencing context without explanation. We turn to the rules that apply specifically to presentencing procedure.

"The prosecution may rebut matters presented by the defense," R.C.M. 1001(d), excepting non-factual matters in the accused's unsworn statement, R.C.M. 1001(c)(2)(C); *United States v. Cleveland*, 29 M.J. 361 (C.M.A. 1990). The plain language of R.C.M. 1001 does not support Appellant's contention, and we have found no binding authority supporting it.[5] *United States v. Lowe*, 56 M.J. 914 (N.M.Ct.Crim.App. 2002), supports Appellant, but we find it no more persuasive than *Henson* in that it misapplies *United States v. Wingart*, 27 M.J. 128 (C.M.A. 1988). It is true that if opinion evidence relating to rehabilitative potential is offered under R.C.M. 1001(b)(5), extrinsic evidence of instances of conduct is not admissible to support or contradict that opinion, *Wingart*, 27 M.J. at 133, 136, but the issue in this case, like the issue in *Lowe*, does not arise under R.C.M. 1001(b)(5), as we are not dealing with evidence of rehabilitative potential offered by the Government under that provision. The terms of R.C.M. 1001(b) do not extend beyond its boundaries. *United States v. Griggs*, 61 M.J. 402 (C.A.A.F. 2005).

In short, we see no reason why extrinsic evidence such as Prosecution Exhibit 3 should be *per se* inadmissible to rebut evidence such as Defense Exhibit A during presentencing proceedings. Therefore we reject Appellant's position.

---

[5] The accused's opinion included in an unsworn statement is not rebuttable by extrinsic evidence, *United States v. Cleveland*, 29 M.J. 361 (C.M.A. 1990), although factual material in the accused's unsworn statement may be rebutted by extrinsic evidence, R.C.M. 1001(c)(2)(C); *United States v. Manns*, 50 M.J. 767, 770 (N.M.Ct.Crim.App. 1999), *aff'd*, 54 M.J. 164 (C.A.A.F. 2000). Here, we are not dealing with the accused's unsworn statement. In *United States v. Wingart*, 27 M.J. 128, 133 (C.M.A. 1998), the accused's favorable performance reports were not rebuttable by the Government, but only because they had not been offered by the defense. In *United States v. Hursey*, 55 M.J. 34 (C.A.A.F. 2001), the court seemed to assume that extrinsic evidence was admissible to rebut opinion evidence of character in presentencing proceedings, but held the proffered evidence at issue not admissible because it did not survive M.R.E. 403 balancing. *United States v. Hallum*, 31 M.J. 254 (C.M.A. 1990), approves rebuttal of written character opinions by a witness testifying to other misconduct. *See also United States v. Evans*, 25 M.J. 859 (A.F.C.M.R. 1988), *aff'd*, 28 M.J. 74 (C.M.A. 1989) (a split decision with the main opinion supporting rebuttal of documentary evidence of "outstanding military character and performance record" by a written report adverting to specific misconduct).

This does not mean that Prosecution Exhibit 3 perforce must be admitted. It is appropriate for us to address the other objections to it that were raised at trial: that it was not proper rebuttal, in part because the 2 September letter (Prosecution Exhibit 3) logically could not rebut the 22 October letter (Defense Exhibit A); and that the probative value of the 2 September letter did not outweigh the possible prejudice. (R. at 179-81.)

During presentencing as well as before findings, "[i]t is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Wirth*, 18 M.J. 214, 218 (C.M.A. 1984) (*citing United States v. Shaw*, 9 USCMA 267, 271, 26 C.M.R. 47, 51 (1958) (Ferguson, J., dissenting) (internal quotation marks omitted)). "[T]he relevance of the Government's rebuttal evidence must be determined in light of evidence first introduced and issues initially raised by the defense at this court-martial." *Id.* (*citing* 6 Wigmore, *Evidence* §1873 (Chadbourn rev. 1976)). As to probative value weighed against prejudice, "Although relevant [and otherwise apparently admissible], evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members . . . ." M.R.E. 403. As Appellant notes, the admission of evidence of specific acts of misconduct carries the danger that an accused will be punished for acts he was not charged with and did not plead guilty to. (Appellant Br. 8.)

The relevance of Prosecution Exhibit 3 as rebuttal evidence is limited by the contents of the letter from Appellant's father. We agree with the Government that the fact that Prosecution Exhibit 3 was written before Defense Exhibit A does not mean it cannot rebut the latter, as it may indeed counteract it, but goes to its weight. Put another way, the timing reduces the probative value of Prosecution Exhibit 3. Perhaps the most that can be said for it is that it helps to put Defense Exhibit A in perspective by offering a different viewpoint. Defense Exhibit A itself has somewhat limited probative value. It presents Appellant's father's viewpoint, based on his interactions with his son but most likely without information or direct observation of his son's conduct and interactions with others. Prosecution Exhibit 3 suggests that Appellant's disrespect of others and of authority, reflected in the offenses of which he was convicted, continued to be manifested after seven weeks in the brig, at least until brig discipline ("Desegregation") was imposed upon him. Another seven weeks passed before Defense Exhibit 3 was written. Neither exhibit, standing alone, provides more

than a glimpse of Appellant; coming from different viewpoints as they do, together they provide a slightly wider glimpse than Defense Exhibit A alone.

On the other side of the M.R.E. 403 balance sits the danger that Appellant would be punished for uncharged misconduct ("Disobedience, Disrespect, Staff Harassment and Provoking words and Gestures") as well as for his negative and uncooperative attitude. This danger we judge to be very small in a trial by judge alone; we find it does not outweigh the probative value of the exhibit. We find no error in the admission of Prosecution Exhibit 3.

We note that the sentence amounted to time served in addition to reduction to E-1 and a bad-conduct discharge. Even if Prosecution Exhibit 3 had not been admitted, we are confident that the same sentence would have been adjudged.

### Decision

As noted earlier, it appears from the record that no part of the sentence has yet been ordered executed. Execution of other elements of the sentence may be ordered at the same time the bad-conduct discharge is ordered executed if not done sooner. If the other elements are not ordered executed, Appellant must be restored to the paygrade of E-3 from the grade of E-1 to which he was presumably reduced in accordance with Article 57(a)(1)(A), UCMJ.[6]

---

[6] Execution of the sentence elements other than the bad-conduct discharge should normally be addressed in the Convening Authority's Action. R.C.M. 1107(f)(4)(B) ("The action shall indicate, when appropriate, whether an approved sentence is to be executed . . . ."). The limits of the term "when appropriate" have not been authoritatively established, as far as we can determine. We do not see the omission of execution as fatal to the reduction in grade, which is the only sentence element other than the bad-conduct discharge that remains meaningful. R.C.M. 1113(b) ("Except [for a punitive discharge], the convening authority *may* order all or part of the sentence of a court-martial executed when the convening authority takes initial action under R.C.M. 1107." (Emphasis added)). However, we agree with the Discussion to R.C.M. 1113(a) that no part of a sentence may be carried out with finality unless it is ordered executed.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge KANTOR concurs.

FELICETTI, Judge (concurring in the result):

I believe it was error to admit Prosecution Exhibit 3 but that the error was harmless. I, therefore, concur in the result.

The relevance of Prosecution Exhibit 3 as rebuttal evidence is limited by the contents of the letter from Appellant's father. The Government claims the father's letter made the "unmistakable impression . . . that Appellant had taken a round turn on his life and substantially improved his attitude and behavior while in confinement." (Government Br. 6.) I disagree with the Government's characterization. One must move well beyond the Government's argument and further parse the letter to find some implicit impression, or ambiguity, to "rebut." This highlights the extremely low probative value of Prosecution Exhibit 3.

This already low, or nonexistent, probative value is further reduced by the fact that the signer of Prosecution Exhibit 3 gives no indication of personal knowledge of the cited events or that he had reviewed the relevant documents summarized in the letter. Also, Prosecution Exhibit 3 was signed on 2 September 2004, fifty days before Appellant's father wrote his letter. Thus, the negative brig report was at least several weeks old by the date of the father's letter. As conceded by the Government, this timeline further reduces the weight of Prosecution Exhibit 3.

Military Rule of Evidence (M.R.E.) 403 applies at sentencing even when the rules of evidence are relaxed. *See United States v. Saferite*, 59 M.J. 270, 274 (C.A.A.F. 2004). As noted in the main opinion, admission of Prosecution Exhibit 3 carried the danger that Appellant would be punished for the uncharged misconduct. Additionally, I believe the impact of presentencing "gamesmanship" and "tactical tap dancing" that deprives the court of meaningful sentencing

information or confuses the issues is an appropriate factor to be explicitly balanced against an exhibit's probative value. *United States v. Wingart*, 27 M.J. 128, 131, 133 (C.M.A. 1988).

Two other service courts have applied the principle of M.R.E. 405 and held that the Government may not prove specific acts of misconduct through extrinsic evidence to rebut the accused's presentencing character evidence. *United States v. Henson*, 58 M.J. 529, 531-32 (A.Ct.Crim.App. 2003); *United States v. Lowe*, 56 M.J. 914, 917 (N.M.Ct.Crim.App. 2002). These holdings raise a significant issue and cannot be so easily dismissed. Presentencing gamesmanship and tactics clearly may deprive the court of meaningful sentencing information and confuse the issues.[1] In my view, Prosecution Exhibit 3 was subject to exclusion, both as improper extrinsic evidence and under M.R.E. 403. The overall intent and balance of the sentencing procedure, moreover, is distorted if a few kind words from a friend or parent on behalf of an accused throws open the door to all manner of uncharged misconduct evidence that would otherwise be prohibited by R.C.M. 1001(b).

I fully agree, however, that admission of Prosecution Exhibit 3 did not impact the sentence, so it was a harmless error to admit it.



For the Court,

Jane R. Lim
Clerk of the Court

---

[1] The Navy case clearly illustrates how gamesmanship can confuse the issues instead of providing useful sentencing information. In *Lowe*, the defense, in accordance with the pretrial agreement limits on witness testimony, admitted a letter from a Navy psychologist who concluded the accused did not present a serious threat to society. *Lowe*, 56 M.J. at 915. Rather than call and cross-examine this Navy witness, or obtain the opinion of a different expert, the Government admitted a significant amount of uncharged misconduct evidence. *Id.* This tactical approach, while perhaps saving money, left the court largely in the dark about the psychologist's credibility and the strength of her opinion since it remained unknown if the psychologist knew of the uncharged misconduct or could explain why it did not impact her expert opinion. In *Henson*, the Government had already cross examined the defense character witnesses about the uncharged misconduct so that the holding can also be seen as preventing Government overreaching. *Henson*, 58 M.J. at 530.

**Appendix A**

Text of Defense Exhibit A:

October 22, 2004

Lieutenant Rich McWilliams
2300 General Meyer Avenue
Building 11
New Orleans, La 70142

Dear Lieutenant McWilliams:

I am Thomas's father, Tommy Bridges. I always made the best effort to raise Thomas with the morals, work ethic, values and attitude that I thought every young man should have. When he told me that he was joining the Coast Guard I was very proud and had high hopes that Thomas would make a career in the military. I knew that he would receive great training and discipline that he needed as well as some structure in his life. I know that Thomas made some poor choices and used bad judgment on more than one occasion. Unfortunately we can't open up our young people's heads and pour in all of our knowledge and experience, they have to make their own mistakes and the best we can hope is that they learn from them. I really believe that Thomas has learned as much from his mistakes as he did from his training in the Coast Guard. His mother and I have visited him every chance we could and we have seen him grow up quite a bit over the last several months. The whole experience of being in the Coast Guard (even in the Brig) has helped him grow and develop as a man. I believe that Thomas is more squared away now than he has ever been in his life. Thomas still has a long way to go in life to be where he needs to be mentally, emotionally and spiritually. I am looking forward to helping him continue to grow as a person and a man when he leaves the service. His mother and I are in a position to assist and guide him in the proper direction with whatever support he needs. I hope that Thomas is able to receive a discharge that will not haunt him the rest of his life. I have devoted my life to public service. I have been employed with the Jefferson County Sheriff's Office since 1985, serving ten years in the Vice & Narcotics unit and eventually becoming the supervisor of that unit. Over that time I have seen what poor choices and drug use can do to people. I think Thomas will be a benefit to society and be a productive citizen. Thank you for your time.

/s/
Sergeant Tommy Bridges
Jefferson County Sheriff's Office

**Appendix B**

Prosecution Exhibit 3:

02 SEP 04

From:   Office in Charge, Naval Brig/Correctional Custody Unit, Pensacola, FL
To:    LT. Bart Marcules CGD Eight Detailed Trial Counsel

Subj:   PROGRESS REPORT ICO FNMK CARL BRIDGES, USCG

Ref:    (a) LT. Bart Marcules, USCG, Detailed Defense Counsel letter of 01 SEP 04, subj: Progress Report

1.  In response to reference (a), the following information is provided concerning the behavior and adjustment of FNMK Bridges while confined at this facility:

  Name:  Bridges, Carl
  Period of Custody:  14 Jul 04 – Present.
  Custody Classification:  Medium In-Detainee
  Work and Training Reports:  Below Average

2.  Discipline:  Several violations of Brig Rules and Regulations.

3.  Discussion:  FNMK Bridges has displayed a negative attitude while in confinement, consistently displaying an uncooperative attitude toward Brig staff as well as appearing to have a negative influence on his peers.  The eight work and training reports submitted has had an overall below average of 50.  The minimum required to advance is 52.  FNMK Bridges recently went to a Discipline and Review Board and was found to be in violation of several Brig Regulations.  As a result FNMK Bridges is currently in Desegregation for Disobedience, Disrespect, Staff Harassment and Provoking words and Gestures.

4.  Point of Contact:  MM1 (SW) Timothy R. Walker, Corrections Counselor.

       /s/
       M.R. Kaszuba

Copy to:
Brig Record
Brig Counselor