# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and SALUSSOLIA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant CHARLES I. CANNON**
**United States Army, Appellant**

ARMY 20180580

Headquarters, 7th Infantry Division
Jennifer B. Green, Military Judge
Colonel Rebecca K. Connally, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain Loraima Morciglio, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Major Lauryn D. Carr, JA (on brief).

31 July 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas,[1] of one specification of desertion and one specification of absence without leave (AWOL) terminated by apprehension, in violation of Articles 85 and 86, Uniform Code of Military Justice, 10 U.S.C §§ 885 and 886 [UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for twenty-four months, and reduction to the grade of E-1. The convening authority

---

[1] Appellant entered his pleas of guilty without the benefit of a pretrial agreement.

approved the sentence as adjudged and credited appellant with eighty-six days against his sentence to confinement.

This case is before the court for review pursuant to Article 66, UCMJ.[2] We agree with appellant that he was prejudiced when the military judge erroneously considered inadmissible sentencing evidence. Accordingly, we reassess the sentence in our decretal paragraph.

## BACKGROUND[3]

During the commission of the offenses for which he was convicted, appellant was assigned as a human resource specialist at Joint Base Lewis-McChord, Washington. On 6 January 2006, appellant absented himself from his unit without authorization. At the time he left, he was aware his unit was pending deployment to Iraq, and that he was facing investigation by Army Criminal Investigation Command (CID) for misconduct related to drug use and theft. On 6 March 2006, local civilian law enforcement returned appellant to military control based on an arrest warrant after stopping him for a traffic violation. The same day appellant was returned to military control, he again departed the unit without authorization and remained absent from the Army until 14 August 2018, when he turned himself in. During appellant's second absence, he had several encounters with civilian law enforcement resulting in more than one criminal conviction. Appellant's unit also deployed a few months after his second departure and experienced hazardous duty in Iraq that resulted in casualties.[4]

During the rebuttal portion of the government's sentencing case, Command Sergeant Major (CSM) TD testified, over defense objection, that he disagreed with the defense sentencing witnesses' characterization that appellant was a good soldier. Command Sergeant Major TD further explained the basis for his disagreement by citing investigations related to appellant's alleged misconduct for a positive

---

[2] Additionally, we have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

[3] The factual recitation below is limited to those facts necessary to resolve the assignment of error raised by appellant.

[4] Appellant pleaded guilty to desertion set forth in Specification 2 of Charge I. In the alternative, the government charged Specification 1 of Charge I, desertion with the intent to shirk hazardous duty for the same period, but the military judge acquitted appellant of Specification 1 of Charge I.

urinalysis, theft of credit cards from the unit mailroom, and drinking alcohol in violation of an order.

Also in rebuttal, the government offered five Prosecution Exhibits (Pros. Ex.) evidencing appellant's criminal history before and during his periods of unauthorized absence, most of which addressed numerous instances of uncharged misconduct. Prosecution Exhibit 9 is a criminal history report addressing seventeen incidents involving civilian arrests and dispositions, only a few of which seemingly resulted in convictions. Prosecution Exhibit 10 contains some of appellant's civilian arrest history, to include several civilian arrest reports that occurred during his desertion and two arrest reports documenting the arrest that terminated appellant's initial AWOL. Prosecution Exhibit 11 is an excerpt of a CID report pertaining to appellant's positive urinalysis for methamphetamines, which apparently was never charged. Prosecution Exhibits 12 and 13 are CID final reports stating not only that appellant was the subject of the charged AWOL and desertion offenses, but also that he was the subject of several uncharged UCMJ violations, including larceny of private funds, larceny of mail, making a false official statement,[5] and failure to obey a regulation (possession of an unregistered firearm and illegal transportation of a firearm).

The military judge admitted the five Pros. Exs., over defense objection, stating one limitation in that that she would only consider those portions of Pros. Ex. 9 evidencing past convictions. She offered little basis for her ruling other than stating that the evidence was admissible to rebut matters by the defense and noting the defense had "opened the door."[6] She also made no mention of weighing the evidence's probative value against the danger of unfair prejudice pursuant to Military Rule of Evidence [Mil. R. Evid] 403.

During sentencing argument, the government requested the military judge consider appellant's uncharged misconduct, stating in pertinent part:

> Your Honor, consider also the accused's time in the Army
> rife with misconduct. Rather than setting the example for

---

[5] Although appellant was charged with making a false official statement in violation of Article 107, UCMJ, the allegation of making a false official statement referenced in the Pros. Exs. 12 and 13 pertain to a different and unrelated statement, which was never charged.

[6] In proffering Pros. Exs. 9-13, the government argued that the uncharged misconduct contained therein was admissible to rebut defense assertions that appellant had high rehabilitative potential and was a good soldier.

his Soldiers, Sergeant Cannon chose to use methamphetamine. Rather than taking care of his Soldiers, he stole their mail and used their debit cards to buy things like clothing and alcohol. You have the law enforcement reports for these, two investigations, and a positive [urinalysis] result related to the methamphetamine, Your Honor, and we ask that you consider those when you deliberate on the appropriate sentence.

## LAW AND DISCUSSION

Appellant asserts that the military judge erred when she permitted the government to elicit testimony from CSM TD regarding specific instances of uncharged misconduct to rebut the defense witnesses' opinions that appellant had high rehabilitative potential and was a good soldier. Appellant also asserts that the military judge erred by admitting and considering Pros. Exs. 9-13, contending this extrinsic evidence of uncharged misconduct was inadmissible.

A military judge's evidentiary ruling regarding sentencing evidence is reviewed for a clear abuse of discretion. *United States v. Clemente*, 50 M.J. 36, 37 (C.A.A.F. 1999). Military judges receive "less deference" if, as in this case, "they fail to articulate their balancing analysis on the record." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). If we determine the military judge erred in admitting sentencing evidence, we grant relief only if we find the erroneous admission of such evidence "substantially influenced the adjudged sentence." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citation omitted). We evaluate the influence of erroneously admitted evidence "by weighing: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (citing *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

As a threshold matter, we must determine whether the military judge erred by considering portions of CSM TD's sentencing testimony and Pros. Exs. 9-13. First, we find the military judge erred when she allowed CSM TD to testify about specific instances of uncharged misconduct by the accused, which involved a positive urinalysis, theft from the mailroom, and drinking in violation of an order. The government sought to introduce this evidence to provide the basis for why CSM TD personally disagreed with the defense witnesses' opinions that appellant was a good soldier and had relatively high rehabilitative potential. Although, the government was permitted to and did attack the defense witnesses' opinions by referencing specific instances of uncharged misconduct during cross-examination, the government was not permitted to introduce extrinsic evidence of these specific

4

instances, which were not otherwise admissible under any basis allowed by Rule for Courts-Martial [R.C.M.] 1001(b). *See United States v. Wingart*, 27 M.J. 128, 133-136 (C.M.A. 1988); *United States v. Henson*, 58 M.J. 529, 531 (Army Ct. Crim. App. 2003).

Next, we find the military judge did not err in admitting Pros. Ex. 9. Although the military judge admitted Pros. Ex. 9, which contained numerous instances of uncharged misconduct committed by appellant during his extended period of his desertion, the military judge explicitly indicated that she would not consider any portion of Pros. Ex. 9 other than information pertaining to his civilian convictions, which were otherwise admissible under R.C.M. 1001(a)(1)(A)(iii). Thus, even if the military judge erred by admitting portions of Pros. Ex. 9, we are confident that any error is harmless given her stated limitation to consider only the convictions.

Lastly, we find the military judge erred by admitting and considering Pros. Exs. 10-13. Prosecution Exhibit 10 included information showing appellant's apprehension for the charged AWOL, as well as information addressing appellant's civilian arrests that transpired during his period of desertion. The disposition of each of these arrests is unclear. Prosecution Exhibits 11-13 are CID documents, which mostly reference uncharged offenses for which appellant was identified as a subject. Like CSM TD's testimony about specific instances of uncharged misconduct, the government's purpose for introducing this extrinsic evidence was to attack the defense witnesses' opinions of appellant's character. We find that to the extent these exhibits addressed extrinsic evidence of uncharged misconduct, they were not admissible for such a purpose, nor were they otherwise admissible under any basis outlined in R.C.M 1001(b).

To the extent that the military judge erred by admitting and considering the above extrinsic evidence, we must now evaluate the influence of the erroneously admitted evidence on the adjudged sentence. *See* Mil. R. Evid. 103(a); UCMJ art. 59(a); *Bowen*, 76 M.J. at 89; *Kerr*, 51 M.J. at 405.

First, the government's case was very strong. There was no factual dispute about appellant's guilt, as he pleaded guilty to both the AWOL offense terminated by apprehension and the desertion that spanned a period of over twelve years. There was also substantial aggravation evidence properly admitted into evidence that addressed some of appellant's criminal activity during the period of his desertion, such as a conviction by civilian authorities for possessing and selling illicit

narcotics.[7] Evidence introduced by the government also established appellant's desertion was a few months prior to the unit's deployment and had a direct impact the unit's mission in Iraq.

Next, by contrast, the defense case was not particularly strong. During his unsworn statement, appellant apologized, expressed remorse for his actions, and explained how he tried to rehabilitate himself. He stated he was able to use veteran's benefits, based off his first enlistment, to obtain two associate degrees during his extended unauthorized absence. He also claimed he suffered from anxiety and substance abuse during this long period, served twenty-two months in the Florida Department of Corrections, and had been arrested on numerous other occasions. He claimed he tried to resolve the desertion "issue" numerous times and spoke to various "VA and government officials," who purportedly responded that "he had been separated from service" and "the Army no longer cared to prosecute him" because he was not turned over military control after his numerous arrests. Appellant also seemed to suggest that the primary reason he eventually turned himself in after such a long period was to obtain a DD Form 214 to enable him to continue to receive veteran's benefits. The defense offered four witnesses, two noncommissioned officers and two family members, all of whom opined that appellant possessed rehabilitative potential. However, the government was able to attack the basis for their opinions through cross-examination.

Related to the third and fourth prong of the *Kerr* test, the extrinsic evidence erroneously admitted by the military judge was material. The unavoidable effect of this evidence was to paint appellant as a morally deficient noncommissioned officer prior to his unauthorized absence and a repetitive criminal after his departure. Trial counsel also exacerbated the effect of the erroneously admitted evidence by asking the judge during his sentencing argument to consider some of the specific uncharged misconduct when determining an appropriate sentence. The quality and the resulting impact of the evidence, however, was somewhat diminished as some of the uncharged misconduct had already been elicited by defense during its case in chief[8] and some was referenced generally by appellant in his unsworn statement. Also, the information within the admitted exhibits appeared scant, as they provided few details as to appellant's alleged post-desertion criminal activity.

---

[7] Prosecution Exhibit 7, which was admitted absent defense objection, evidences appellant's conviction for selling heroin during the period of his desertion.

[8] The defense elicited evidence that appellant was under CID investigations for a positive urinalysis and larceny to explain appellant's unauthorized absence, and to rebut the government's assertion that he deserted with the specific intent to avoid hazardous duty.

After balancing the factors, we are convinced that appellant was prejudiced by the introduction of various acts of uncharged misconduct. The cumulative nature of the substantial amount of uncharged misconduct, coupled with the government's specific argument asking the military judge to consider the uncharged misconduct, compels us to find that the erroneous evidence impacted the adjudged sentence. Accordingly, we reassess the sentence.

## CONCLUSION

The findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the errors noted, the entire record, and the principles articulated by our Superior Court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, confinement for twenty-three months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored.

Chief Judge KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7